MARION HELEN O'HARA, petitioner-respondent,

*v.*

GEORGE KENNETH O'HARA, defendant-appellant, and MARION IRENE EVANS et al., third party defendants, respondents.

[Submitted May term, 1945.   Decided October 15th, 1945.]

*Messrs. Hopkins, Vorburger & Dickson* (*Mr. Herman G. Vorburger,* of counsel), for the appellant.

*Messrs. Levenson & Levenson* (*Mr. Abe D. Levenson,* of counsel), for respondents.

The opinion of the court was delivered by

PERSKIE, J.

The basic question for decision on the facts of this case is whether the general release, given by respondent to appellant, after the entry of final decree for absolute divorce from appellant, bars her asserted right to a modification of the existing order for her maintenance and support.

The following are the facts which give rise to the stated question.

In a former suit by respondent, Marion Helen O'Hara, for the support and maintenance of herself and the child of their marriage, Marion Irene O'Hara, then a minor, a final decree was entered on February 24th, 1937, fixing the alimony awarded respondent. Pursuant to the reservation in that decree for leave to apply for a variance or modification of alimony which respondent contemplated to invoke in the suit which she was about to institute against appellant, George Kenneth O'Hara, for an absolute divorce for the cause of desertion, respondent and appellant and Edward A. Markley, trustee for respondent, did, on February 21st, 1938, make and execute an agreement in writing composing appellant's financial liability incidental to his marital relationship.

It would serve no useful purpose to detail the provisions of that lengthy agreement. It should suffice, in light of the posed question requiring decision, to state that, in addition to all other provisions, the agreement provided that appellant deposit $7,000 with the trustee who was to hold same in escrow pending the entry of the decree *nisi* in respondent's contemplated suit for absolute divorce when the trustee was to pay it to respondent as therein provided, that appellant was to make weekly payments in the amounts and under.the contingencies provided for the support of respondent and their daughter, that respondent and the daughter were to have the right to reside in the premises known as 49 Sommer Avenue, Maplewood, New Jersey, and appellant was to pay all expenses for its upkeep, and if for any reason respondent and the daughter had to give up the premises, respondent was to be provided with additional funds to the extent of

$100 a month for the rental of a home elsewhere, that when the daughter shall have reached the age of twenty-one years, the property (49 Sommer Avenue) was to be deeded over to her, free and clear, as absolute owner thereof to do with it as she might please, that the payments made and covenants satisfied by appellant under the agreement were to be taken and accepted by respondent "as settlement in full for all alimony, temporary or permanent, support and maintenance, past, present or future" for herself and the daughter, that respondent agreed "to execute and deliver [to appellant] at the time of the taking of the final decree," in her divorce action a "release" releasing him from any and all liability which might be based on rights incident to their marital relationship, and that this agreement was not to be binding upon the parties until same was approved by the Court of Chancery. If not approved, the moneys deposited with the trustee were to be returned to appellant; his obligations under the agreement were to come to an end, and there should remain in force only the provisions of the decree dated February 24th, 1937.

Respondent filed her suit for absolute divorce against appellant for the cause of desertion. The decree *nisi* was entered on April 20th, 1938. By the terms of that decree respondent and appellant were divorced from the bonds of matrimony. The decree *nisi* recites that the agreement of February 21st, 1938, was determined to be for the benefit of respondent and the daughter, suitable and adequate for their maintenance and support. Those determinations, so the decree recites, were the result of the consideration given to the agreement and investigation made of the position and circumstances of the parties, although there is nothing in the record to indicate the nature or manner of the investigation made. At all events, the agreement was approved and made part of the decree *nisi*. The final decree, entered on July 21st, 1938, made the decree *nisi* absolute and the marriage of the parties was dissolved accordingly. On July 25th, 1938, respondent executed and delivered to appellant the general release pursuant to her undertaking under the agreement of February 21st, 1938. It is admitted that appellant has met all of his

obligations under the stated agreement even though he questions the asserted obligation on his part to pay the taxes and upkeep of the Sommer Avenue property, after it had been conveyed to the daughter, pending the judicial determination thereof.

On June 6th, 1944, respondent filed a petition to modify the decree *nisi* (April 20th, 1938). Broadly stated, she alleged that she was forty-three years of age, that she was under the doctor's care and unable gainfully to be employed, that she had exhausted all but $150 of the $7,000 fund for doctors' bills and other expenses, that she was otherwise without money or other assets save an automobile valued at $100 and certain other property which she neither details nor values, and that since the making of the agreement, the law obliged her to pay an income tax on the alimony which she receives. She further alleged that appellant's income, since the making of the agreement, has been greatly increased by "reason of the demise of his father," the true amount of which was unknown to her. Accordingly, she prayed for the additional sum of $600 per annum to meet her income tax requirements, that appellant make discovery under oath of his income and assets in his name or held for him, that since her daughter with whom she lives had since become of age and had married, appellant should give respondent $100 a month as and for her rent and for the use and occupation of a home for her, that appellant should pay $75 a week for her support and maintenance instead of $55 a week, and that appellant should continue to pay the taxes and costs of the upkeep of the Sommer Avenue property.

Appellant answered denying respondent's asserted right to a modification of the provisions of the decree *nisi*. He also set down three answers in lieu of plea. We are only concerned with the second which pleads the general release as a bar to the relief prayed for, save such obligations as may be recognized by virtue of the agreement of February 21st, 1938. Appellant also filed a counter-claim against respondent and against his daughter, Marion Irene Evans, and Waldo Evans, her husband, and appellant's mother, Julia O'Hara, who were made parties to the suit by order of court. In his counter-

claim appellant alleged, in substance, that he fully performed his obligations relying upon the validity of the agreement, the decree *nisi* and the final decree, that to perform his undertakings he was obliged to and did borrow moneys from his father and induced his mother to convey the Sommer Avenue property, which he neither owned nor in which he ever had a financial interest, to his daughter from whom no consideration passed for the conveyance, and that respondent, by instituting these proceedings, violated and repudiated her agreement and thus the consideration for his payment of the $7,000 failed. Accordingly, he sought an order requiring respondent, among other things, specifically to perform her agreement of February 21st, 1938, and if that agreement was found to be illegal or otherwise unenforceable, that respondent repay him the $7,000, and if she should not do so that he be permitted to offset further alimony payments against that sum. He further sought to enjoin his daughter and her husband from conveying or mortgaging the property pending final determination of the cause. Incidentally, such relief was granted on September 29th, 1944. Here too, in the event the agreement was found to be illegal or otherwise unenforceable, appellant sought to compel his daughter and her husband to re-convey the property to appellant's mother, Julia O'Hara. And in like contingency (illegality and unenforceability of the agreement), appellant sought a cancellation and rescission of the agreement—relief from his obligations thereunder.

The foregoing facts were made to appear, by respondent's verified petition and by appellant's verified answer thereto (no oral proofs were adduced) on the return of the motion made for respondent and the daughter to strike the first, second and third answers in lieu of a plea and to strike the appellant's counter-claim against them. On the facts so presented, the advisory master concluded that, by the language of the statute (*R. S. 2:50–37*), its underlying philosophy, as construed by our decisions, the general release by respondent to appellant (raised under the second answer in lieu of a plea) was contrary to public policy and thus did not operate as a bar to the jurisdiction of Chancery to con-

sider and determine respondent's asserted right for a modification of the decree *nisi* relating to her maintenance and support. The advisory master also concluded that the counter-claim as against the daughter (Marion Irene Evans) set forth no cause of action against her. That conclusion was based upon the premise that the conveyance to the daughter of the Sommer Avenue property was a completed gift to her, the natural object of appellant's bounty, and that no reason was shown for disturbing that gift.

Accordingly, the advisory master advised an order (February 16th, 1945) which was entered denying respondent's motion to strike the first and third answers in lieu of plea and the counter-claim against her, continuing the same until final hearing, but granting respondent's motion to strike the second answer in lieu of plea, and also granting the motion for the daughter (Marion Irene Evans) to strike the counter-claim as against her.

From the striking of the second answer in lieu of plea and from the striking of the counter-claim against the daughter appellant appeals.

1. *As to the second answer in lieu of plea.* This answer was properly stricken. Neither the facts and circumstances leading up to and including the execution and delivery of the release by the respondent to the appellant, nor the fact that the release is all-inclusive in its scope, nor the fact that the execution and delivery thereof were effected after respondent had obtained her absolute divorce from appellant, could or did operate to bar the Court of Chancery of jurisdiction to hear and determine respondent's asserted right for a modification of the decree *nisi* from time to time in accordance with her necessities.

By *R. S. 2:50–37* it is provided that: "Pending suit for divorce or nullity brought in this State or elsewhere, *or after decree for divorce,* * * * the Court of Chancery may make such order touching the alimony of the wife, and also touching the care, custody, education and maintenance of the children, or of any of them, as the parties and the nature of the case shall render *fit, reasonable* and *just,* * * *.*" (Italics supplied.)

The public policy underlying this statute and the philosophy of our decisions construing it are fully and lucidly expressed by Mr. Justice Heher for this court in the case of *Parmly* v. *Parmly, 125 N. J. Eq. 545; 5 Atl. Rep. (2d) 789,* which, in principle, controls the instant case. *Cf.,* also, *Applegate* v. *Applegate, 135 N. J. Eq. 29, 32; 38 Atl. Rep. (2d) 119,* and *Madden* v. *Madden, 136 N. J. Eq. 134; 40 Atl. Rep. (2d) 611.*

It should presently suffice to re-emphasize that the jurisdiction of the Court of Chancery to hear and determine respondent's petition to modify the decree *nisi* because of subsequent and varying necessities is under both the statute and decisions of our courts, a continuing one. It was not within the competency of respondent to barter away that continuing jurisdiction. That continuing jurisdiction comes into play upon the changing circumstances of the parties. Thus a continuing order for alimony is not conclusive. *Cf. Barber* v. *Barber, 323 U. S. 77; 89 L. Ed. 114.* For obviously, the court cannot anticipate subsequent and varying circumstances which may affect either or both of the parties. It is the settled law of this state that "alimony remains perpetually subject to modification * * *." *Walker* v. *Walker, 118 N. J. Eq. 309, 310; 173 Atl. Rep. 743.* That law may not be changed by the parties however well meaning they may have contracted to the contrary, or whatever the form or solemnity of the instrument purporting to effect such change may be. The husband's obligation to render suitable support and maintenance—a state policy—arises out of the status of wedlock. It is in no sense contractual. The wife's right to alimony is a personal right. It is in no sense a property right. It is neither susceptible of assignment by her nor capable of enjoyment by her in anticipation. She may not contractually surrender her statutory right to alimony in future in consonance with her needs. *Parmly* v. *Parmly, supra* (at *p. 549*).

2. *As to the counter-claim against the daughter.* We think that in the circumstances exhibited that the issues raised under this claim should have been held for final hearing when the parties may offer proof in support of their respective contentions. We can not, and do not, on the record, as

presently submitted, determine whether on the merits the counter-claim should have been dismissed. We intimate no opinion on this branch of the case.

The cause is remanded to the court below there to be treated consistently with this opinion. No costs are allowed to either party.

· *For modification*—THE CHIEF-JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, COLIE, OLIPHANT, WELLS, RAFFERTY, DILL, FREUND, McGEEHAN, JJ. 14.