Argued March 4, modified March 18, petition for rehearing
denied April 22, 1953

# FEVES *v.* FEVES

254 P. 2d 694

*F. M. Phelps* argued the cause for appellant. On the brief were Phelps, Burdick & Walker, of Portland.

*Walter H. Evans, Jr.,* argued the cause for respondent. On the brief were Krause & Evans, of Portland.

Before LATOURETTE, Chief Justice, and WARNER, ROSSMAN, LUSK, BRAND and TOOZE, Justices.

TOOZE, J.

This is an appeal from an order modifying that portion of a divorce decree which relates to alimony.

On August 5, 1940, Sara Jean Feves, as plaintiff, commenced suit for divorce in the circuit court for Multnomah county, against Louis Feves, as defendant, upon the ground of cruel and inhuman treatment. Angene Feves, now 15 years of age, is the lawful issue of the marriage between plaintiff and defendant.

On August 5, 1940, defendant demurred to plaintiff's complaint. The demurrer was overruled, and upon defendant's refusal to plead further, his default was entered by the court. On the same day there was filed in the suit a property settlement agreement entered into between plaintiff and defendant. Thereafter, but on the same day, a trial was had, and a decree of divorce was entered in favor of plaintiff.

As a part of said decree, it was decreed that the provisions of the property settlement agreement be and the same were in all respects approved and confirmed. In accordance with the terms of said agreement, the decree, after awarding plaintiff the permanent custody of said minor child, ordered and decreed that defendant pay to plaintiff the sum of $40 per month for the support and maintenance of Angene, "during her minority, or until further order of this court"; also, in accordance with the terms of the agreement, the court further ordered and decreed "that the defendant pay plaintiff the sum of $35.00" per month "during the lifetime of the plaintiff so long as plaintiff remains unmarried", and further that "the defendant pay plaintiff the sum of $500.00" and turn over to her certain items of personal property described in the agreement.

On July 27, 1948, there was filed in said court and suit the original of an agreement entered into between plaintiff and defendant under date of July 6, 1948. Omitting formal parts, this agreement provides:

"WHEREAS, the parties hereto have heretofore entered into a property settlement agreement, dated the 3rd day of August, 1940, in connection with divorce proceedings initiated by Second Party in the Circuit Court of Multnomah County, under Case No. 138-154; and,

"WHEREAS, Second Party has contemplated petitioning the Court for an Order modifying the said property settlement agreement to provide for an increase in the allowance to the minor daughter of the parties hereto; and,

"WHEREAS, It is the intention of the parties that the provision in said agreement requiring First Party to pay the sum of Thirty-five Dollars ($35.00) per month to Second Party by way of alimony, be deleted therefrom, and a cash settlement be made to Second Party in lieu thereof;

"NOW, THEREFORE, In consideration of the premises and obligations herein recited, it is agreed:

"1. First Party shall pay to Second Party the sum of Five Hundred Dollars ($500.00) upon execution of this agreement, but said sum shall be in lieu of all claims of and demands by Second Party against First Party for any periodic alimony payments whatsoever.

"2. First Party shall, and will on or before the 10th day of each month during the minority of the minor child of the parties hereto, said child being ANGENE FEVES, pay the sum of One Hundred Thirty-Five Dollars ($135.00) per month for the support and maintenance of said minor child.

"3. First Party shall cause a policy of insurance on his life, in the amount of Five Thou-

sand Dollars ($5,000) to be made payable to the said ANGENE FEVES, as beneficiary, irrevocably, which policy shall not be hypothecated, encumbered or otherwise burdened by First Party.

"In executing this modified property settlement agreement, each of the parties hereto releases the other from any and all obligations accruing, or which may have accrued to the other by reason of the agreement of August 3, 1940, above referred to, it being the intention of the parties hereto that the instant agreement shall, and does embody all of the provisions of settlement regarding the property interest of the parties hereto.

"It is further agreed by and between the parties hereto that either of the parties may cause this agreement to be entered and filed as part of the proceedings under Case No. 138-154, without further order or approval of the Court.

"IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals the 6th day of July, 1948.

"[Sgd.] Louis J. Feves
First Party.

[Sgd.] Sara Jean Feves
Second Party."

The foregoing agreement was not presented to the court for its consideration and approval at the time it was filed.

On June 15, 1951, plaintiff filed in said suit her motion, supported by affidavit, for a modification of the original divorce decree, to provide that defendant be required to pay $200 per month for the use of plaintiff in the support and maintenance of the minor child, and the further sum of $300 per month for the use and benefit of plaintiff for her support and maintenance by way of alimony.

Defendant filed his affidavit in opposition to the motion and, as a part thereof, incorporated the agreement between the parties, which is previously quoted. He asked that the agreement be enforced according to its terms. He objected to any allowance to plaintiff as alimony. He made no objection to paying the sum provided for the support of the child nor to the provision of the agreement respecting the insurance, and on trial expressed a willingness to increase the amount of the payments for the minor if her needs demanded it.

A hearing was held upon plaintiff's motion, and evidence was introduced by both parties. Upon conclusion of the hearing the trial court entered its order modifying the original decree of divorce and decreeing that commencing September 15, 1951, defendant should pay to plaintiff as alimony the sum of $100 per month "for the balance of plaintiff's lifetime or until she remarries, or until further order of this Court"; and further decreeing that defendant should pay the sum of $135 per month for the support and maintenance of the minor child during her minority, or until further order of the court.

Defendant appeals from that portion of the order awarding alimony to plaintiff.

Three questions are posed by this appeal:

(1) In view of the terms of the agreement of August, 1940, which was approved and adopted by the court, did the court have jurisdiction to consider and allow plaintiff's motion for modification respecting the matter of alimony?

(2) Assuming that despite the provisions of the agreement of August, 1940, and upon changed conditions, the court retained jurisdiction to modify the decree as to alimony, was it de-

prived of such jurisdiction by virtue of the agreement of July, 1948?

(3) If the agreement of July, 1948, did not, in and of itself, oust the court from jurisdiction to modify the decree regarding alimony, what effect should be given that contract?

We shall consider these questions in the order stated.

Under the agreement of August, 1940, defendant promised to pay to plaintiff the sum of $500, payable $200 on August 31, 1940, $25 on September 10, 1940, and $25 on the 10th day of each month thereafter until the full sum of $500 shall have been paid. The agreement also provided that plaintiff should have the following items of personal property: 1 radio-phonograph and records, 2 etchings, various books, 1 silver tea set, 1 Haviland china dish, 1 set of dishes, certain linens, 1 chocolate set, antique snuff boxes, 1 baby's bedroom set and furnishings, baby's table and chair set and personal belongings, and personal effects of plaintiff, all located in the home of plaintiff and defendant.

The agreement specifically provided as follows:

"Second: That the first party shall and will on the 10th day of August, 1940 and on the 10th day of each month thereafter during the lifetime of said second party and so long as second party remains unmarried pay to second party *as alimony* the sum of $35.00 a month.

"* * * * * *

"Fifth: It is further understood and agreed by and between the parties hereto that upon the execution of this agreement and the rendetion [sic] of a decree of divorce, the rights of the second party against the first party are limited to the payment of the sums and the performance of the

agreements as herein provided, and each party hereto waives all right that either may have in the property of the other owned by the other at this time or at any future time, *and second party accepts the foregoing in full satisfaction and settlement of all claims on the party* [sic] *of second party against first party for support, maintenance, alimony or otherwise."* (Italics ours.)

Despite the fifth provision of the contract, it is clear that the agreement was not such a settlement of property rights between the parties as to become binding after approval of the court and deprive the court thereafter of its jurisdiction to modify the decree as respects alimony.

■ The right to alimony is statutory and is not based upon any contractual obligations. It arises by virtue of the provisions of § 9-914, OCLA. So far as applicable, this statute provides:

"Whenever a marriage shall be declared void or dissolved, the court shall have power to further decree as follows:

"* * * * * *

"(3) For the recovery from the party in fault such an amount of money, in gross or in instalments, as may be just and proper for such party to contribute to the maintenance of the other; * * *"".

Section 9-915, OCLA, insofar as applicable to the problems now before the court, provides:

"At any time after a decree [divorce] is given, the court or judge thereof, upon the motion of either party, shall have the power to set aside, alter or modify so much of the decree as may provide for the appointment of trustees for the care and custody of minor children, or the nurture and/or education thereof, or the maintenance of either party to the suit; * * *.""

■ It is evident that the original agreement between the parties was one calling for the payment of alimony as such. The decree was for alimony. It was subject to modification upon changed conditions. This rule has become hornbook law in this state. In *Prime v. Prime,* 172 Or 34, 139 P2d 550, Mr. Justice BRAND, in speaking for the court, thoroughly covered the subject. He reviewed most of our prior decisions. It is unnecessary to repeat that discussion. Also see *Warrington v. Warrington,* 160 Or 77, 83 P2d 479; *Phy v. Phy,* 116 Or 31, 236 P 751, 240 P 237, 42 ALR 588.

However, the agreement of July, 1948, occupies an entirely different status from that of August, 1940. This agreement was not one between husband and wife. It was one entered into by parties who were dealing at arms' length; both were sui juris. Each was represented by able counsel. There was not the slightest taint of fraud, misrepresentation, or unfairness on the part of either party in connection with the making of the contract. Both dealt with their eyes open. The contract itself was prepared by plaintiff's attorney in Portland and was sent to Pendleton for execution by defendant.

Defendant paid to plaintiff a valuable consideration for her agreement to waive future alimony payments. He acted in the utmost good faith.

■ It is axiomatic that public policy requires that persons of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts, when entered into freely and voluntarily, shall be held sacred and shall be enforced by courts of justice; and it is only when some other overpowering rule of public policy intervenes, rendering such agreements unfair or illegal, that they will not be enforced. *Eldridge v. Johnson,* 195 Or 379, 245

P2d 239, 251. This rule applies to persons who were formerly husband and wife, but who have been divorced, as it does to all other persons sui juris.

■ However, it is our opinion that in view of the public policy of this state concerning alimony and as formulated by our statutes and the decisions of this court interpreting them, an agreement of the type involved in this litigation must be presented to and be approved by the court before it shall be deemed binding upon the parties. This law providing for alimony was enacted from considerations of public concern, and it cannot be abrogated by mere private agreement. The matter now under discussion is of first impression in this court. In our former decisions involving questions of alimony we were concerned with the provisions of agreements entered into prior to or at the time of divorce.

We think the true rule governing agreements of the type now before us is well and correctly expressed by the Illinois court in *Walter v. Walter*, 189 Ill App 345, 348, as follows:

> "* * *. We hold that before such an agreement can be binding and conclusive its fairness and equity must be made manifest to the court having jurisdiction, and that its approval must appear of record."

Also see *O'Hara v. O'Hara*, 137 NJ Eq 369, 44 A2d 169, 166 ALR 365, and note commencing at page 370.

We have held that if an actual property settlement based on contract is entered into between a husband and wife and is approved by the court, it may be binding on the parties and beyond the power of the court to modify. *Taylor v. Taylor*, 154 Or 442, 60 P2d 942; *Geis v. Gallus*, 130 Or 619, 278 P 969.

Approval by the court of such property settlement contracts made prior to or at the time of divorce, as the foundation of their binding effect, seems to be a requirement announced in our prior decisions. See generally *Prime v. Prime,* supra.

If approval by the court of such contracts is necessary to make them binding, even more should approval be required of a contract that assumes to satisfy statutory liability and which is entered into subsequent to divorce.

Inasmuch as the agreement of July, 1948, was not presented to nor approved by the court, we hold that it did not become binding upon the parties or the court, even though completely executed, and that the court had jurisdiction to entertain plaintiff's motion for a modification of the decree as to alimony.

We now come to the question as to what effect should be given the agreement of July, 1948. This agreement was admitted into evidence on the trial. It was then before the court for approval or rejection. The evidence disclosed that defendant had fully complied with all its terms.

The trial court found, and we find, that "no advantage was taken of the wife [plaintiff] when she made the 1948 agreement." The record reveals that she acted freely, voluntarily, and under expert advice. She is now thirty-nine years of age, is in comparatively good health, and is capable of earning her own livelihood. In fact, she possesses more than ordinary ability as a writer and is well qualified as a secretary. She has been engaged in gainful employment the majority of the time since the divorce, earning at times as much as $400 per month, and, at the time of trial, earning $250 per month.

Plaintiff's application for an increase in the amount of alimony to be paid her is not actually based upon any showing of real need on her part, but rather it is based upon the proposition that in recent years defendant has enjoyed a substantial increase in his annual income. She contends that this increase in income on the part of defendant is such a change of conditions as to warrant a modification of the decree for an increase in the alimony payments.

Defendant is a doctor of medicine and practices at Pendleton. He had not yet become well established in his chosen profession at the time of divorce. He owned no property other than some personal property, including the equipment of his medical offices.

Defendant entered the armed service of the United States in 1942. He remarried in 1943. Three children have been born as the issue of his second marriage. In 1945 he was discharged from the army and resumed the practice of medicine at Pendleton. At that time his present wife had accumulated approximately $7,000 which she turned over to defendant to enable him to purchase necessary office equipment and build up his business.

Through the joint efforts of defendant and his present wife, defendant's business expanded until during the past three or four years he has enjoyed an annual gross income of $25,000 to $30,000 per year.

To support her contention that defendant's present income is the criterion for determining the amount of alimony that should be paid, plaintiff invites our attention to the case of *Strickland v. Strickland,* 183 Or 297, 304, 192 P2d 986. In that case we said:

"There is no defined standard by which the amount to be paid as alimony can be determined by precise mathematical calculations. The amount

of alimony to be awarded rests largely in the discretion of the trial court and its descision relative thereto should not be disturbed on appeal except in case of clear abuse. Blake v. Blake, supra. In determining the allowances to a divorced wife for her support and maintenance and for the care, custody and education of the minor children, *it is proper to take into consideration the social standing, comforts, and luxuries of life which she and her children probably would have enjoyed but for the divorce.* Hogan v. Hogan, 196 Ga. 822, 28 S. E. (2d) 74; Adams v. Adams, 17 N. J. Misc. 234, 8 A (2d) 214; Packard v. Packard, 34 Kan. 53, 7 P. 628." (Italics ours.)

The rule stated is applicable in all cases where at the time a divorce decree is entered the question of the amount of alimony to be allowed is before the court for determination. The cases cited in support of the rule announced as to the factors that should be considered in fixing the amount all were cases involving the allowance of alimony as a part of the original decree of divorce. None of them involved a motion for an increase of amount over that provided in the final decree, although the Strickland case did.

■ In a motion for modification of a decree to increase or decrease the amount of alimony payments the financial status of the former husband is an important factor to consider in connection with his ability to pay. But his improved financial status, if any, does not of itself ordinarily warrant an increase, and the amount of such increase, if it be determined that an increase is necessary and proper, is usually governed by considerations different from those which apply to an original allowance at time of decree. It is largely governed by the necessities of the former wife and the ability of the former husband to pay.

Divorce terminates the martial status. Thereafter, the parties bear no relation to each other. They are as strangers. But for the statute, no obligation whatever would exist for further support and maintenance of the former wife.

It is manifest that this statutory obligation for support and maintenance should not be so interpreted as to continue the rights of the former wife just as though no divorce had been granted. The statute does not contemplate a continuing right in her to share in future accumulations of wealth by her divorced husband, to which she contributes nothing.

However, under the facts of this case, we are of the opinion that the agreement between the parties entered into in July, 1948, insofar as it concerns the question of alimony, should have been approved by the trial court in this proceeding and is approved by this court. It was a fair agreement, is based upon a valuable consideration, and has been completely executed.

■■ The obligation of a father to support his minor child stands upon an entirely different footing from that applying to a divorced wife. This obligation is a continuing obligation and exists in the absence of statute. Under the statutes of this state a decree providing for the support of a minor child is always open to modification upon changed conditions.

■■ Insofar as the minor child of plaintiff and defendant is concerned, there has been a substantial change in conditions since the entry of the original decree. Angene is now 15 years of age and is attending Lincoln high school in Portland. She is interested in ballet dancing and for several years, with defendant's complete approval, has been taking ballet lessons. It is a matter of common knowledge that during the past few

years the cost of living has increased very materially. Suitable clothing for a girl of the age of Angene is quite expensive. She should be entitled, so far as practicable, to live according to the same standard she would be living had no divorce been granted. Defendant testified that he considers her on the same basis as his three children born as the issue of the second marriage. In fixing the amount of money to be paid for this child's support, the several considerations mentioned in *Strickland v. Strickland,* supra, are material.

Neither Angene nor the court is bound by the provisions of the agreement between plaintiff and defendant respecting the amount to be paid toward the support and maintenance of the child. In the light of the facts and circumstances of this case, we are of the opinion that defendant should be required to pay the sum of $160 per month toward the care and support of Angene, instead of the sum of $135 as provided in the agreement of July, 1948, and in the order of modification.

The order and decree of the trial court is modified by striking therefrom all provisions for the payment of alimony by defendant to plaintiff and providing that until further order of the court defendant shall pay to the clerk of the court, for the use and benefit of plaintiff in the support and maintenance of said minor child, the sum of $160 per month, beginning April 10, 1953.

Plaintiff shall recover costs.