R. L. McMurtry, Mary P. McMurtry, Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 58094.   Filed February 28, 1958.

*Arthur Glover, Esq.*, for the petitioners.
*David E. Mills, Esq.*, for the respondent.

OPINION.

Forrester, *Judge:* The Commissioner has determined a deficiency in petitioners' income tax for the calendar year 1951 in the amount of $2,522.64 and addition to tax for substantial underestimation of tax under section 294 (d) (2) in the amount of $151.36. Petitioners have conceded one other issue by stipulation. The facts have been wholly stipulated and are included herein by reference.

Petitioners R. L. McMurtry and Mary P. McMurtry are husband and wife and reside in Amarillo, Texas. They filed a joint income tax return for the calendar year 1951 with the then collector of internal revenue for the second district of Texas.

During the period commencing November 19, 1950, and ending March 11, 1951, the petitioners purchased breeding cattle as follows:

| Date purchased | From whom purchased | Number of head | Cost |
|---|---|---|---|
| Nov. 19, 1950 | E. L. Morris | 52 cows | $14,000 |
| Jan. 26, 1951 | Gene Cluck | 161 cows | 40,250 |
| Jan. 26, 1951 | Wolf Bros.—Dumas | 182 cows | 47,000 |
| Jan. 20, 1951 | Carl E. Kemp—Dimmitt | 42 cows | 14,600 |
| Mar. 11, 1951 | Tobe Foster | 17 bulls | 6,375 |

In the month of September 1951, the petitioners sold 336 of the cows purchased on January 26, 1951, above noted, and 15 of the bulls purchased on March 11, 1951, for $105,825. On November 5, 1951, petitioners sold 91 of the 94 cows purchased from E. L. Morris and Carl E. Kemp, as above noted, for $45,350. During the period commencing with the date of acquisition of the cows and bulls and ending with the date of sale of the same cows and bulls, petitioners held such livestock for breeding purposes.

The first issue is whether the gains from the sale of petitioners' breeding cattle qualify for long-term capital gains treatment under section 117 (j) of the Internal Revenue Code of 1939 where such breeding cattle have been held by the petitioners in excess of 6 months but less than 12 months. The applicable statutory provisions appear below.[1]

Section 324 of the Revenue Act of 1951 amended section 117 (j) (1) of the Internal Revenue Code of 1939 by adding at the end thereof, *inter alia*, "Such term also includes livestock, regardless of age, held by the taxpayer for draft, breeding, or dairy purposes, and held by

[1] SEC. 117. CAPITAL GAINS AND LOSSES.

(j) GAINS AND LOSSES FROM INVOLUNTARY CONVERSION AND FROM THE SALE OR EXCHANGE OF CERTAIN PROPERTY USED IN THE TRADE OR BUSINESS.—

(1) DEFINITION OF PROPERTY USED IN THE TRADE OR BUSINESS.—For the purposes of this subsection, the term "property used in the trade or business" means property used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (l), held for more than 6 months, and real property used in the trade or business, held for more than 6 months, which is not (A) property of a kind which would properly be includible in the inventory of the taxpayer if on hand at the close of the taxable year, or (B) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or (C) a copyright, a literary, musical, or artistic composition, or similar property, held by a taxpayer described in subsection (a) (1) (C). Such term also includes timber or coal with respect to which subsection (k) (1) or (2) is applicable and unharvested crops to which paragraph (3) is applicable. Such term also includes livestock, regardless of age, held by the taxpayer for draft, breeding, or dairy purposes, and held by him for 12 months or more from the date of acquisition. Such term does not include poultry.

(2) GENERAL RULE.—If, during the taxable year, the recognized gains upon sales or exchanges of property used in the trade or business, plus the recognized gains from the compulsory or involuntary conversion (as a result of destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation or the threat or imminence thereof) of property used in the trade or business and capital assets held for more than 6 months into other property or money, exceed the recognized losses from such sales, exchanges, and conversions, such gains and losses shall be considered as gains and losses from sales or exchanges of capital assets held for more than 6 months. If such gains do not exceed such losses, such gains and losses shall not be considered as gains and losses from sales or exchanges of capital assets. * * *

him for 12 months or more from the date of acquisition." Section 324 of the Revenue Act of 1951 also provided that the quoted sentence "shall be applicable with respect to taxable years beginning after December 31, 1941, except that the extension of the holding period from 6 to 12 months shall be applicable only with respect to taxable years beginning after December 31, 1950."

The taxable year here in question began after December 31, 1950. The applicable holding period is therefore 12 rather than 6 months. Since none of the cows or bulls was held by petitioners for as long a period as 12 months they did not represent "property used in the trade or business" within the meaning of that term as it is defined in section 117 (j) (1). Consequently, the gains from the sale of the cows and bulls does not qualify for capital gains treatment under section 117 (j) (2).

Petitioners' argument is that under the decisions in the cases of *Albright* v. *United States*, (C. A. 8, 1949) 173 F. 2d 339, and *United States* v. *Bennett*, (C. A. 5, 1951) 186 F. 2d 407, breeding cattle constitute "property used in the trade or business" when held for over 6 months, and that the 1951 amendment did not restrict the existing law but enlarged it to include immature animals, such as heifers, which, although held for breeding purposes only a short time, had actually been owned for 12 months or more.

The crux of petitioners' argument is that the 1951 amendment to section 117 (j) (1) was intended to govern only those situations where livestock had been held by the taxpayer for over 12 months when sold but where the same livestock had been used for draft, breeding, or dairy purposes for less than 6 months, and that as to all other sales of livestock the *Albright* and *Bennett* decisions would apply.

Petitioners' argument is untenable for a number of reasons. First of all, the plain language of the 1951 amendment does not support such an interpretation. The amendment states one rule applicable alike to all livestock used for draft, breeding, or dairy purposes. Secondly, the legislative history of the amendment unmistakenly demonstrates that Congress considered the amendment to be a codification of the *Albright* and *Bennett* decisions. S. Rept. No. 781, 82d Cong., 1st Sess. (1951), p. 41, 1951-2 C. B. 487. Representative Robert L. Doughton, chairman of the House Ways and Means Committee, in a House floor discussion of H. R. 4473, the House bill which became the Revenue Act of 1951, stated:

The bill writes into the law the principle of the Albright case giving capital gain treatment to livestock used in the taxpayer's trade or business. It reaches this result by defining property used in the trade or business as "livestock held by the taxpayer for draft, breeding, or dairy purposes for 12 months or more." The term livestock is intended to be given a broad rather than a narrow interpretation. [97 Cong. Rec., p. 6891 (1951).]

After the bill had passed the House of Representatives, the Senate added the words "regardless of age" to the amendment proposed in the House bill. The addition was explained in the Senate Finance Committee report as follows:

In January 1951 the United States Court of Appeals, Fifth Circuit, decided the *Bennett* case (186 F. (2d) 407) in a manner similar to the *Albright* decision. Subsequently the Bureau of Internal Revenue issued a ruling, Mim. 6660, stating that the capital gains treatment provided by section 117 (j) would be applied to sales of culls. However, this ruling contained a statement that this treatment might not be applied in he case of animals "not used for substantially their full period of usefulness." This exception appears to have resulted in new uncertainties, and it has been stated that Bureau agents are interpreting this ruling to mean that only animals which have completely outlived their usefulness can qualify for the capital gains treatment.

The House bill added a new sentence to section 117 (j) (1) providing that the term "property used in the trade or business" includes "livestock held by the taxpayer for draft, breeding, or dairy purposes for 12 months or more." In view of the uncertainties resulting from the recent ruling (Mim. 6660), section 324 of your committee's bill restates the sentence contained in the House bill as follows:

"Such term also includes livestock, regardless of age, held by the taxpayer for draft, breeding, or dairy purposes, and held by him for 12 months or more from the date of acquisition." [S. Rept. No. 781, 82d Cong., 1st Sess. (1951), p. 41, 1951-2 C. B. 487.]

The above language clearly indicates that Congress was aware of the varying interpretations which might be attributed to the language of the House bill and sought by the addition of the words "regardless of age" to adopt a rule applicable alike to all sales of livestock held by the taxpayer for draft, breeding, or dairy purposes. The rule adopted by the Congress requires a holding period of 12 months. Decision must be entered in favor of respondent inasmuch as none of the livestock sold by petitioners was held by them for this length of time.

The remaining issue is whether petitioners are liable for an addition to tax for substantial underestimation of tax within the meaning of section 294 (d) (2) of the Internal Revenue Code of 1939.

Petitioners filed their return for the calendar year 1951 on January 31, 1952, showing a tax due of $1,045.22. As hereinbefore determined, petitioners correct tax liability for the calendar year 1951 is $3,567.86. Since 66⅔ per cent of this tax (the percentage applicable to farmers) exceeds the tax of $1,045.22 declared by petitioners, it is held that petitioners are liable for the addition to tax provided by section 294 (d) (2) of the Internal Revenue Code of 1939. Reasonable cause is not a defense to the addition to tax prescribed by section 294 (d) (2). *H. R. Smith*, 20 T. C. 663; *Estate of Arthur Garfield Hays*, 27 T. C. 358.

*Decision will be entered for the respondent.*