E. Eugene King and Vera F. King, Petitioners, *v.* Commissioner of Internal Revenue, Respondent.
E. Eugene King, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 64571, 65719. Filed October 22, 1958.

*Edwin J. Welsh, Esq.,* and *William F. Meyer, C. P. A.,* for the petitioners.

*Aaron S. Resnik, Esq.,* and *Jack T. Fuller, Esq.,* for the respondent.

FORRESTER, *Judge:* The Commissioner has determined a deficiency in the income tax of petitioner E. Eugene King for 1952 and additions thereto under sections 294 (d) (1) (A) and 294 (d) (2) of the Internal Revenue Code of 1939, and deficiencies in the income tax of both petitioners for 1953 and 1954, as follows:

| Taxable year | Deficiency | Additions | |
|---|---|---|---|
| | | Sec. 294 (d) (1) (A) | Sec. 294 (d) (2) |
| 1952 | $12,032. 80 | $1,770. 49 | $1,180. 32 |
| 1953 | 235. 94 | | |
| 1954 | 237. 54 | | |

The issues to be decided are as follows:

1. Did respondent err in determining that petitioner E. Eugene King realized taxable gain in 1952 as the result of the transfer by him of his interest in a certain ranch property?

2. If respondent did not so err, the following additional questions must be answered:

(a) Is taxable gain limited to that realized by petitioner E. Eugene King in the transfer to his former wife of only a life estate in his one-half interest in the ranch property?

(b) Must the value of the interest of petitioner E. Eugene King so transferred be reduced by any part of a mortgage encumbrance on the ranch property at the time of the transfer?

(c) Must such value be further reduced by the value of the dower rights in the ranch property of the former wife of petitioner E. Eugene King, and if so, what value should be assigned to such rights?

3. Did respondent err in determining that the income from the interest transferred was taxable to petitioner?

4. Did respondent err in determining that petitioner E. Eugene King is liable in respect of 1952 for the additions to tax for failure to file a declaration of estimated tax and for substantial underestimation?

## FINDINGS OF FACT.

Some of the facts have been stipulated, and are so found.

Petitioner E. Eugene King filed his individual income tax return for the calendar year 1952 with the director of internal revenue at Portland, Oregon. Petitioners E. Eugene King and Vera F. King filed their joint income tax returns for 1953 and 1954 with the same director. E. Eugene King alone will hereinafter be referred to as the petitioner.

Petitioner and Vaunda Haller (hereinafter called Vaunda) were married in 1932. On April 8, 1944, petitioner and his brother Harold each acquired from their parents in an *inter vivos* transaction and for consideration an undivided one-half interest in certain real property, known as the Umatilla ranch property (hereinafter called Umatilla). On January 25, 1951, petitioner, Harold, and their respective wives joined in executing a mortgage on Umatilla, securing a loan in the amount of $47,500. Petitioner and Harold used the proceeds of the loan for business purposes.

On an undisclosed date, Vaunda commenced divorce proceedings against petitioner. Thereafter, on July 3, 1952, the parties entered into a "Property Settlement Agreement" (hereinafter called the agreement), which read as follows:

WHEREAS, the parties hereto are now husband and wife but have separated and the above named plaintiff [Vaunda] has heretofore commenced a suit for a divorce against the defendant and in said suit the defendant was required to make monthly payments of $300.00 a month for the support of plaintiff and the minor children, and it is desired to settle and adjust all property rights between the parties, and all other rights save and except the marriage relationship,

Now, THEREFORE, it is hereby understood and agreed:

*Custody of Minor Children:* The parties stipulate that plaintiff is a fit and proper person to have the exclusive custody, care and control of the minor children, subject to the Court's approval, and in any suit for a divorce, the defendant will not resist the award of the minor children to plaintiff.

*Payments:* The defendant shall continue making the monthly payments of $300.00 a month to plaintiff to and including September 1, 1952, and upon said date, all liability for said payments shall terminate.

The defendant agrees to assign to plaintiff a claim against Leonard King in the sum of $2,000.00, of which $1,000.00 with interest is payable in the Fall of 1952; and a further payment of $1,000.00 with interest payable in the Fall of 1953, and said amount of money, to-wit: $2,000.00 with interest, shall be plaintiff's individual property.

The defendant shall convey to plaintiff a life estate in:

Lot 6, Block 51, Redmond, Oregon,

with the remainder to Margaret Ann King, age 16; Robert E. King, age 11, and Richard Lester King, age [*sic*] and to their heirs and assigns.

It Is Understood and Agreed that there is an unpaid balance owing by the defendant on the purchase price of the said premises, and the defendant covenants and agrees that he will make all payments against the aforesaid property and will pay the annual taxes on said property until the same has been paid for in full, and that upon full and complete payment of all indebtedness against the aforesaid Lot 6, Block 51, Redmond, Oregon, the property shall be conveyed to plaintiff during her lifetime and the remainder to the above named children by a warranty deed.

Eugene King covenants and agrees that he is the owner of an undivided interest in and to:

The South half of Section 28; North half of Section 33, Township 5 North, Range 32, E. W. M., the Southwest quarter of Section 33 in Township 5 North, Range 32, E. W. M., the Southwest quarter of Section 33, excepting therefrom the following, viz: Beginning at the Southwest corner of the Southwest quarter of said Section; thence North 9 chains, 85 links to the middle of a public road; thence along said road South 83°10' West 4 chains; thence South 85°30' West 37 chains; thence North 86°0' West 9 chains, 61 links to a point 7 chains 15 links North of the Southwest corner of said Section 33; and thence South to the place of beginning.

It Is Understood and Agreed that the land just above described is owned by Harold J. King of Umatilla County, Oregon, and Everett E. King, subject to a mortgage indebtedness of record in Umatilla County, and the defendant covenants and agrees that said mortgage indebtedness shall be paid in full and that he will convey a life estate in and to the aforesaid property of a one-half interest therein together with the rents, hereditaments, and tenements, to plaintiff, with the remainder upon the death of plaintiff, in equal shares to Margaret Ann King, Robert E. King and Richard Lester King, the children of plaintiff and the defendant. The aforesaid deed shall further provide that in the event of the death of said children, or any of them, during the lifetime of plaintiff, then the surviving children shall take the interest of such child as shall predecease plaintiff. In the event that plaintiff shall survive all of the minor children, then the remainder after the death of plaintiff, to the heirs and assigns of said children.

It Is Specifically Understood that the above described farm lands in Umatilla County are presently rented on a crop-share lease to King Ranches, by an oral lease providing that the owners, to-wit: the defendant, Eugene King and his brother, Harold King, shall receive one-third of the rents and profits as rental, and King Ranches receive two-thirds of the crop for farming the same. From and after the date of the execution of this agreement, plaintiff shall receive defendant's share of the rentals, or one-sixth of the crops produced on said lands in Umatilla County for the year 1952, and from then on during her lifetime.

The defendant promises and agrees to pay, as attorney fees for plaintiff's benefit, the sum of $750.00, on or before October 1st, 1952.

It Is Further Understood and Agreed That the aforesaid property settlement shall constitute a complete property settlement agreement between the parties, and except as herein provided, the defendant shall not be responsible for nor be called upon to pay any sums for the support of plaintiff or the minor children, except for insurance premiums hereinafter to be mentioned.

It Is Further Understood and Agreed that the crop rentals from the lands in Umatilla County shall be considered as one-half as the payment of permanent alimony to plaintiff during her lifetime, and one-half for the support, sustenance and education of the minor children.

It Is Further Understood and Agreed that, from and after the date of this agreement, plaintiff is to be considered as the sole owner of all the household effects, furniture, dishes, bedding and household utensils in the home at Redmond, Oregon, free and clear of all claims of the defendant.

It Is Further Understood and Agreed that except as herein expressed, plaintiff shall make no claim of any kind or nature against the defendant, either for child support, alimony, support for herself or for any interest in or to any other property of the defendant, whether owned by the defendant at the present time or to be hereinafter acquired. Plaintiff agrees to and does upon full and complete performance of this agreement, release and absolve the defendant from any and all other claims by her of any kind or nature, either against the defendant or his estate, except that in the event that any suit or action becomes necessary to enforce this agreement, then and in that event, the prevailing party in such suit or action shall recover of the losing party, a reasonable attorney fee to be determined by the Court.

The defendant covenants and agrees that he will cause the necessary deeds of conveyance and other instruments to effectuate this agreement to be prepared, executed and delivered to plaintiff, and plaintiff covenants and agrees to execute any quitclaim deeds or releases as to all of the property of the defendant and to cancel a notice of lis pendens which has been filed in Umatilla County against the property of the defendant in Umatilla County, and against the property of King Ranches in Umatilla County.

The Defendant has represented to plaintiff that it is his intention to sell the business of King Bros. Equipment Company in Redmond, Oregon, and thereupon to pay up all the indebtedness against the property in Umatilla County during the year 1952, and that such representation by the defendant is a material consideration for the execution of this agreement by plaintiff. In the event that such indebtedness shall not be paid so that the lands in Umatilla County are free and clear of all encumbrances on or before December 31, 1953, then plaintiff may bring an action or suit for the breach of this agreement and call upon the defendant to support the minor children until the aforesaid encumbrances are paid, and the life estate in and to said lands are [sic] in the name of plaintiff, free and clear of all liens and encumbrances.

In the event that the defendant shall not make the payments on the home in Redmond, Oregon, as herein provided, then said payments may be made by plaintiff at her option, and plaintiff shall have a cause of action against the defendant for the amounts paid by plaintiff on the aforesaid home in Redmond, including taxes and interest on all of said payments.

*Life Insurance:* In addition to other payments to be made by Eugene King for the benefit of the minor children, it is understood and agreed that the defendant has heretofore purchased an endowment policy issued by the Pacific Mutual Life Insurance Company, No. 1046071 on the life of Margaret Ann King in the sum of $2,000.00. The policy is a nonparticipating 20-year endowment policy and matures at the age of the insured at 27 years; the annual payments of which are $116.96, payable on the 12th day of May of each year during the life of the policy. The defendant promises and agrees to keep said insurance in full force and effect.

That there has been issued an endowment policy on the life of Robert Eugene King in the sum of $2,000.00 by Pacific Mutual Life Insurance Company; said policy will mature in the sum of $2,000.00 at the age of the insured at 18 years. The annual payments are $116.96 a year, payable on the 12th day of May of each year, and the defendant promises and agrees to make the said payments promptly as the same become due and to keep said insurance in full force and effect.

That a third policy on the life of Richard Lester King has been issued by the Pacific Mutual Life Insurance Company, said policy being No. 1208202. The policy is in the sum of $2,000.00; the annual payments are $112.08 payable April 21st of each year and the defendant promises and agrees to make annual payments and to keep said policy in full force and effect during the life of the policy.

In the event that the defendant shall fail to make any of the aforesaid payments on premiums on any of the three insurance policies, plaintiff may make said payments and the defendant promises to repay to plaintiff with interest at 6% any payments made by plaintiff on said insurance policy or policies, and agrees that plaintiff may have a right of action on this contract for the failure of the defendant to make said payments promptly as the same become due.

The provisions as to the insurance payments are to be effective notwithstanding any contrary language heretofore in this agreement contained.

In the event of a suit for a divorce a copy of this agreement shall be offered in evidence and incorporated in the decree therein.

IN WITNESS WHEREOF, the parties have hereto set their hands this 3 day of July, 1952.

/s/ Vaunda King,
*Plaintiff*
/s/ E. Eugene King,
*Defendant*

The agreement was thereafter incorporated in a decree of the Circuit Court of the State of Oregon for Deschutes County, granting a divorce to Vaunda, and dated July 22, 1952. On or about August 18, 1952, petitioner conveyed a life estate in his one-half interest in Umatilla to Vaunda, with remainder to their three children. Both Vaunda and petitioner desired at all times that the children eventually receive Umatilla. The deed of conveyance provided in part as follows:

KNOW ALL MEN BY THESE PRESENTS, That I, Eugene King, a single man, in consideration of One Dollar ($1.00) and other valuable considerations to me paid by Vaunda King, and as a marital settlement, do hereby grant, bargain, sell and convey unto the said grantee, a life-time estate in all of the following real property, with the tenements, hereditamanets [sic] and appurtenances, situated in the County of Umatilla and State of Oregon, and the reminder [sic], upon the death of the grantee, to Margaret Ann King, Robert E. King and Richard Lester King, and their heirs and assigns. * * *

* * * This conveyance is given pursuant to a property settlement between the grantee, Vaunda King, and the undersigned, which is incorporated herein and made a part hereof.

All income from Umatilla subsequent to the conveyance has been reported by Vaunda in her income tax returns for 1952, 1953, and 1954. Petitioner did not file a gift tax return in respect of the foregoing transaction. His basis in Umatilla for tax purposes is in the amount of $22,500.

Both parties to the agreement carried out its terms, as they understood them, to the best of their abilities. Vaunda received $300 per month to and including a payment on September 1, 1952.

The value in 1952 of an unencumbered one-half interest in fee simple absolute in Umatilla is stipulated at $57,450. The value of an estate in such one-half interest for Vaunda's life is stipulated at $35,560. The amounts of mortgage indebtedness outstanding against the entire property in 1952 and at the time this proceeding was heard were, respectively, $36,000 and $32,500. In 1952, earnings from Umatilla were in the amount of $4,500.

OPINION.

1. The primary issue is whether the transaction respecting Umatilla was productive of taxable income within the meaning of section 111 (a) and (b) of the Internal Revenue Code of 1939.[1] Concededly, any such gain would be taxable as long-term capital gain.

In *L. W. Mesta*, 42 B. T. A. 933, the wife initially sued for divorce *a mensa et thoro*, and sought alimony. Suit was in Pennsylvania, where the court had jurisdiction to grant alimony as an incident to such suit, but could not do so if an absolute divorce were granted. Subsequently, the wife amended her complaint so as to seek divorce *a vinculo matrimonii*. Shortly thereafter, and apparently as part of an overall agreed plan, the husband and wife entered into an agreement whereby the husband undertook, among other matters, to transfer to the wife 5,200 shares of stock in a certain corporation. The wife agreed, *inter alia*, that the property given her by the taxpayer-husband was "in full settlement and satisfaction of all claims * * * for her maintenance and support" and in lieu of all rights arising out of the marital relationship. A final decree of absolute divorce was entered, and the parties executed the agreement in accordance with its terms.

The value of the 5,200 shares of stock at the time of the agreement was substantially in excess of the taxpayer's basis therein. The basis and value were stipulated by the parties to the tax proceeding. Respondent determined that this difference represented taxable gain to the husband.

This Court (then the Board of Tax Appeals) held respondent's determination erroneous, and refused to find that the fair market

---

[1] SEC. 111. DETERMINATION OF AMOUNT OF, AND RECOGNITION OF, GAIN OR LOSS.

(a) COMPUTATION OF GAIN OR LOSS.—The gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in section 113 (b) for determining gain, and the loss shall be the excess of the adjusted basis provided in such section for determining loss over the amount realized.

(b) AMOUNT REALIZED.—The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received.

value of the shares was similarly the value received by the taxpayer for the surrender by the wife of various rights, and, possibly, the amendment of her suit. A valuation of what the taxpayer received was held impossible. The Board also denied that the transaction represented a sale or exchange, and characterized it rather as a division of property.

This was reversed by the Court of Appeals for the Third Circuit in *Commissioner* v. *Mesta*, 123 F. 2d 986, where it was held that the husband had delivered the stock to his wife in partial discharge of his duty to support her. The value of this release, absent evidence to the contrary, was held equal to the value of the stock. The court, quoting from *Helvering* v. *Horst*, 311 U. S. 112, said at page 988:

"Admittedly not all economic gain of the taxpayer is taxable income. From the beginning the revenue laws have been interpreted as defining 'realization' of income as the taxable event rather than the acquisition of the right to receive it. And 'realization' is not deemed to occur until the income is paid. But the decisions and regulations have consistently recognized that receipt in cash or property is not the only characteristic of realization of income to a taxpayer on the cash receipts basis. Where the taxpayer does not receive payment of income in money or property realization may occur when the last step is taken by which he obtains the fruition of the economic gain which has already accrued to him." * * *

It then went on to say on the same page:

We think there can be no doubt that Congress intended a measurement of values under the circumstances indicated by the statutes quoted, notwithstanding difficulties in determining those values. In the case at bar there is a gain in the value of the stock and an event whereby that gain was realized. The fair market value of the property or benefit received by Mesta for the stock may be difficult to ascertain, but in the absence of any other value being shown we think that it is proper to take fair market value. In the case at bar the amount of the taxpayer's obligation to his wife was fixed in part in terms of stock by the parties themselves who really dealt at arm's length with one another. It was so found by the Commissioner and the taxpayer has not rebutted the presumption that the Commissioner's ruling is correct. We think that we may make the practical assumption that a man who spends money or gives property of a fixed value for an unliquidated claim is getting his money's worth.

Certiorari was denied at 316 U. S. 695, rehearing denied 317 U. S. 704.

Petitioners in their brief seek to distinguish the facts of the instant case from those in *Mesta* on the ground that there the estranged husband and wife had in their agreement fixed the value at which the property in question was to be received by the wife. This does not seem to have been true in *Mesta*. In any event, cf. *Commissioner* v. *Halliwell*, 131 F. 2d 642.

We have recently reconsidered our previous position in *Estate of Gordon A. Stouffer*, 30 T. C. 1244, which case involved the surrender of an option to purchase stock rather than the stock itself, and these

decided to follow the rule of the appellate court in the *Mesta* case. That decision is dispositive of this issue here. Petitioner must be held to have realized taxable gain as a result of the transaction in controversy.

2. We must now determine to what extent a taxable gain was realized.

(a) Vaunda received only a life estate in petitioner's one-half interest in Umatilla, the remainder being transferred to the children. The value of this life estate has been stipulated to be in the amount of $35,560. A pro rata portion of petitioner's basis of $22,500 in his entire one-half interest is allocable thereto, i. e., $13,926.89, which bears the same ratio to $22,500 as $35,560 bears to $57,450.

We agree with petitioner that he realized gain only to the extent of that part of the appreciation in value of his entire interest allocable to Vaunda's life estate. The remainder was transferred outright to the children, not to Vaunda. To be sure, the agreement and decree both required this transfer, but we are satisfied that it was neither conceived nor executed in consideration of any legal benefit flowing to petitioner.

Under Oregon law any purported final release of petitioner from or limitation of his duty toward his children would be ineffective. *Feves* v. *Feves*, 198 Ore. 151, 254 P. 2d 694, 700. Both parties to the divorce proceeding were represented by counsel undoubtedly aware of this, and we do not regard any expressions in the agreement purporting to circumscribe petitioner's further duty toward his children as stemming from his transfer of the remainder interests in Umatilla. Also, those remainders could not, unless they were sold or pledged and the proceeds reinvested, produce income during Vaunda's life. They could thus have no reasonable relationship to the immediate future support of the children.

Vaunda and petitioner both testified that the remainders went to the children because of their mutual wish that Umatilla should eventually be theirs and we believe them. We need not and do not decide whether the transfers of those remainders should have been reported for gift tax purposes; we only decide here that petitioner received no taxable gain therein.

(b) In 1951, Umatilla had been made subject to a mortgage indebtedness in the amount of $47,500. This indebtedness still existed in the amount of $36,000 at the time petitioner and Vaunda were divorced, and had been further reduced to $32,500 when this proceeding was heard.

Petitioner insists that a prorated portion of this mortgage indebtedness must be applied against and reduce any gain to petitioner on account of the transfer to Vaunda. His theory is apparently to the effect that the value of the interest transferred to Vaunda was

$35,560 *less* a proportional part of the mortgage indebtedness in existence at the time of the divorce. We do not find this contention tenable.

Although Vaunda necessarily took her interest subject to the mortgage, petitioner agreed to satisfy it and remains legally bound to do so. There is no sufficient showing that his financial position was then or is now such that there is any substantial doubt as to the effective enforcibility against him or his estate of this obligation.

His response of "No" to the question "Are you in a position to pay that now?" is not probative of this matter. It may well have reflected merely a layman's concept of ability to pay, i. e., cash or other liquid assets. Petitioner had an interest of undisclosed value in a business and may have had other substantial assets. The record is barren with respect to his financial position in 1952 or at any other time. Petitioner bears the burden of proof here and has not satisfied us that any adjustment is required by virtue of the mortgage indebtedness.

(c) Petitioner next argues that the value of the life estate received by Vaunda, and consequently the presumably identical value of that which petitioner received therefor, must be reduced by the value of Vaunda's dower interest in Umatilla. Petitioner claims that such value was in the amount of $2,337. We have no choice but to reject this argument.

Section 113.010, Oregon Revised Statutes, provides as follows:

The widow of every deceased person shall be entitled to dower, the use during her natural life of one-half part of all the land, including any equitable estate in land, whereof her husband was seised of an estate of inheritance at any time during the marriage, unless she is lawfully barred thereof.

Dower is an inchoate right which may never ripen. It is a bare expectancy which petitioner has attempted to evaluate, but his only evidence comes from a witness who is lacking in the proper qualifications. His witness in this respect was William F. Meyer, a certified public accountant, who, along with petitioner's attorney, represented petitioner in this proceeding.

The value of the inchoate right to dower of the wife of a living husband is a question requiring the application of rules of law and actuarial science. The witness was not conversant with either field. The following colloquy took place on cross-examination:

CROSS EXAMINATION

BY MR. RESNIK:

Q. Are you a member of the Bar of the state of Oregon?

A. No, sir.

Q. Have you made any survey of the decisions of the courts of Oregon with relationship to the dower interest of a wife?

A. No, sir.

Q. What significance did you attach to the language in the section of the code read to you by Mr. Welsh which states the wife has a dower interest, quote, unless lawfully barred thereof?

A. Well, I didn't attach any significance to it particularly.

Q. What does that mean?

A. Well, I don't pretend to be a lawyer, and I wouldn't sit here and tell you.

Q. Are you an actuary?

A. No, sir.

MR. RESNIK: I have no further questions.

We conclude that no adjustment is required in respect of Vaunda's dower rights.

3. The Commissioner determined small deficiencies for 1953 and 1954 and now claims a similar deficiency for 1952, on the theory that one-half of the income from Umatilla was required by the deed of conveyance to be applied toward the support of petitioner's children, and is therefore taxable to petitioner despite the conveyance to Vaunda. He concedes that these determinations are inconsistent with his position on the principal issue, but represent protective alternative determinations. Our holding in that issue requires a determination that no part of the income in question was taxable to petitioner.

4. The final issue is whether the Commissioner erred in determining liability for 1952 for the additions to tax for failure to file a declaration of estimated tax and for substantial underestimation, imposed by, respectively, sections 294 (d) (1) (A) and 294 (d) (2) of the Internal Revenue Code of 1939.[2]

A failure to file a declaration of estimated tax is equivalent to an estimate of zero, and the additions under sections 294 (d) (1) (A) and 294 (d) (2) may accordingly be applied simultaneously. Cf. *Nathan Bilsky*, 31 T. C. 35, and cases there cited; see also *Hansen v. Commissioner*, 258 F. 2d 585 (C. A. 9).

A showing of reasonable cause is a defense against imposition of the addition for failure to file a declaration imposed by section

---

[2] SEC. 294. ADDITIONS TO THE TAX IN CASE OF NONPAYMENT.

    (d) ESTIMATED TAX.—

        (1) FAILURE TO FILE DECLARATION OR PAY INSTALLMENT OF ESTIMATED TAX.—

            (A) Failure to File Declaration.—In the case of a failure to make and file a declaration of estimated tax within the time prescribed, unless such failure is shown to the satisfaction of the Commissioner to be due to reasonable cause and not to willful neglect, there shall be added to the tax 5 per centum of each installment due but unpaid, and in addition, with respect to each such installment due but unpaid, 1 per centum of the unpaid amount thereof for each month (except the first) or fraction thereof during which such amount remains unpaid. * * *

      *      *      *      *      *      *      *

        (2) SUBSTANTIAL UNDERESTIMATE OF ESTIMATED TAX.—If 80 per centum of the tax * * * in the case of individuals other than farmers * * * or 66⅔ per centum of such tax so determined in the case of such farmers, exceeds the estimated tax * * * there shall be added to the tax an amount equal to such excess, or equal to 6 per centum of the amount by which such tax so determined exceeds the estimated tax so increased, whichever is the lesser. * * *

294 (d) (1) (A), but not that imposed by section 294 (d) (2) for substantial underestimation. Cf. *R. L. McMurtry*, 29 T. C. 1091, on appeal (C. A. 5); *A. E. Hickman*, 29 T. C. 864; *Ebb James Ford, Jr.*, 29 T. C. 499, 506; *Marvin Maxey*, 26 T. C. 992, 996; *Harry Hartley*, 23 T. C. 353, 360; *H. R. Smith*, 20 T. C. 663.

Section 58 of the Internal Revenue Code of 1939, as applicable to petitioner's taxable year 1952, reads in part as follows:

SEC. 58. DECLARATION OF ESTIMATED TAX BY INDIVIDUALS.

(a) REQUIREMENT OF DECLARATION.—Every individual * * * shall, at the time prescribed in subsection (d), make a declaration of his estimated tax for the taxable year if—

(1) his gross income from wages * * * can reasonably be expected to exceed the sum of $4,500 plus $600 with respect to each exemption provided in section 25 (b); or

(2) his gross income from sources other than wages * * * can reasonably be expected to exceed $100 for the taxable year and his gross income to be $600 or more.

No separate evidence has been introduced with respect to reasonable cause. Petitioner's income tax return for 1952, as filed, shows gross income in the amount of $20,428.97, consisting of partnership income in the amount of $19,997.60 and interest income in the amount of $431.37. Deductions in the amount of $2,078.45 and a single exemption of $600 were claimed, resulting in reported taxable net income in the amount of $17,750.52.

Thus, on the basis of his return as filed, petitioner was required to file a declaration in 1952. There is no evidence as to why he failed to do so. We have no choice but to sustain respondent's determination that both additions apply.

*Decisions will be entered under Rule 50.*