WILLIAM STERLING COLE, JR. *v.* NANCY B. COLE

[Nos. 159 and 519, September Term, 1979.]

*Decided December 20, 1979.*

436

The cause was argued before MOORE, MELVIN and MASON, JJ.

*Theodore G. Bloom,* with whom were *Goodman, Bloom & Cohen, P.A.* on the brief, for appellant.

*Ronald A. Baradel,* with whom were *Hartman & Crain* on the brief, for appellee.

MELVIN, J., delivered the opinion of the Court.

In this appeal, the appellant William Sterling Cole, Jr., challenges an order of the Circuit Court for Anne Arundel County that increased the amount of alimony and child support he was required to pay under a prior divorce decree. The order was filed October 28, 1978, and, in addition to the ordered increases in alimony and child support, dismissed appellant's cross-petition for termination of alimony. After the appellant had filed his appeal from the October 28th order (Appeal No. 159), the appellee, Nancy B. Cole, petitioned the trial court to hold the appellant in contempt of court for failing to pay the increased award. The court did so and by

437

order dated March 30, 1979, directed the entry of "a monetary decree in favor of Nancy B. Cole against William Sterling Cole, Jr. for $10,125 (the arrearage to 23 March 1979) and costs." The appellant then filed a timely appeal from that order (Appeal No. 519). The two appeals were consolidated and arguments thereon were heard on the same day.

## APPEAL NO. 159

### I

The parties were married on June 16, 1954, and had four children. On November 18, 1969, they separated due to "irreconcilable marital difficulties" and on November 24, 1971 entered into a property settlement agreement because they were, in the words of the Agreement, "sincerely and genuinely interested in reaching accord concerning alimony for WIFE, support for the aforesaid children of the parties and the equitable disposition of their jointly and severally owned properties." The Agreement provided, among other things, for monthly payments to the appellee of $275.00 in alimony and $600.00 for the support of the four children, "being One Hundred Fifty Dollars ($150.00) per month per child." The Agreement provided that the appellee agreed "to accept the alimony, child support sums and property settlement ... of this Agreement as adequate under the present financial circumstances of the parties." The Agreement also provided, however, that "the entire matter of alimony and child support shall be subject to the further Order of any Court of competent jurisdiction."

Two months after the date of the Agreement, the appellee, on January 11, 1972, filed her bill of complaint for divorce in the Circuit Court for Anne Arundel County on the ground of voluntary separation. The appellant, who was at that time a Commander in the U.S. Navy and a non-resident of Maryland, did not contest the proceedings. In her testimony before the Master on May 17, 1972, the appellee stated that she wished to have the Agreement "to the extent that the Court sees fit incorporated in these proceedings" and that "on a minimum basis" "the sums of money provided [in the Agreement] for

alimony and child support" were "adequate under the present circumstances."

The divorce was granted by decree dated July 19, 1972. It awarded custody of the four children (William, age 15; John, age 11; Charles, age 7; and Katherine, age 5) to the appellee and, in accordance with the Agreement, provided for alimony of $275.00 per month and child support of $600.00 per month.

On February 23, 1977, the appellee petitioned the court for an increase in alimony and child support on the grounds that "since the passage of the [Divorce] Decree . . . [she] has been unable to provide support and maintenance for the minor children of the parties and support and maintenance as alimony because of the great increase of prices and costs" and that she and *three*[1] of the minor children "are in need and suffer from want of support and care." On April 19, 1977, the appellant filed an answer to the modification petition and a cross-petition in which he denied that an increase was needed and further averred that since the divorce the appellee's income had increased to the point that it was "sufficient to provide adequately for her own needs" and "to enable her to contribute to the support of the three minor children in her custody." The cross-petition further alleged that appellant "has now remarried and acquired additional obligations which have reduced his financial ability to contribute to the support of the children." In his cross-petition, the appellant offered to accept custody of the children if the appellee, "by reason of her extravagance cannot manage on" the amount of child support she was receiving from appellant — which amount he alleged was "more than adequate to provide for their needs." The cross-petition prayed that appellant's "obligation for alimony be terminated."[2]

Testimony of the parties was taken in open court on September 18, 1978. On October 28, 1978, the court filed its order awarding the appellee an increase of monthly alimony from $275.00 to $400.00 and an increase in monthly child

1. The petition stated that since the divorce the parties' oldest son, William, had become "emancipated."

2. The cross-petition also prayed for custody of the children and to be relieved of certain portions of the Agreement concerning his life insurance program for the benefit of the children. These matters are not at issue in this appeal.

support from $150.00 per child to $250.00 "for the three children now living with her." Both increases were to account from February 23, 1977, the date on which appellee filed her petition for modification. As we have stated, the order also dismissed the appellant's cross-petition.

## II

Both parties seem to agree that substantial changes in their respective circumstances have occurred since the date of their divorce on July 19, 1972. The appellant contends on appeal, as he did below, that the changed circumstances evidenced in the record do not support the chancellor's order of October 28, 1978, either with respect to *any* increase in alimony or with respect to the *amount* of increased child support. Further, with respect to alimony only, the appellant contends that the chancellor erred in not either terminating, abating, or, at least, suspending it.

It is, of course, well settled in this State that a court of equity may upon a proper petition to do so modify a decree for alimony or child support at any time if there has been shown a material change in circumstances that justify the action. *Jackson v. Jackson,* 272 Md. 107, 111, 321 A.2d 162 (1974); *Stansbury v. Stansbury,* 223 Md. 475, 477, 164 A.2d 877 (1960); *Winkel v. Winkel,* 178 Md. 489, 498-499, 15 A.2d 914 (1940); *Slacum v. Slacum,* 158 Md. 107, 111, 148 A. 226 (1930); *Lott v. Lott,* 17 Md. App. 440, 302 A.2d 666 (1973). It is equally well settled that, as with an original award, the decision on the question of modification of the original award is left to the sound discretion of the chancellor and will not be disturbed unless that discretion was arbitrarily used or the judgment clearly wrong. *Lott v. Lott, supra.*

The changes that have occurred in the circumstances of the parties since the 1972 divorce are essentially not in dispute. Appellant's gross annual income at the time of the divorce was $19,430.00. In July, 1973, he retired from the Navy and obtained civilian employment. At the time of the modification hearing he had remarried and his gross annual income from all sources (Navy retirement pay, salary and investments) had risen to $57,980.00. With his increased income has come an

admittedly higher standard of living than he enjoyed at the time of the divorce. His listed weekly expenses, including alimony and child support, just about equals his net income. In addition to his income, he listed assets and liabilities reflecting a net worth of $95,594.00, most of which was developed after the divorce.

The appellee's circumstances also changed. At the time of the divorce, she was unemployed and her only income was $277 per year from interest and dividends. After the divorce, she obtained employment as a travel agent and at the time of the modification hearing was earning a gross annual salary of $9,360.00 (about $7000.00 net after payroll deductions), plus unearned income of $1,764.00 per year from interest and dividends. The principal which yields this income is largely derived from her share of jointly held stock purchased during the marriage and her share of the proceeds from the post-divorce sale of the family home in California. At the time of the hearing, as well as at the time of the divorce, she was living with her children in a four bedroom townhouse in Crofton, Maryland, that she rented from her father for $350.00 per month.

There is no indication in the record that her standard of living had changed since the divorce. In her testimony, appellee showed that to maintain that standard her expenses for herself and the three children averaged $1343.62 per month, or approximately $16,128.00 per year.[3] She allocated these expenses between herself and the three children as approximately $4740.00 for herself and $11,378.00 for the children. To meet those combined needs she was receiving the following yearly amounts: [4]

| | |
|---|---|
| Alimony | - $3,300 |
| Child Support | - 5,400 ($150 per month for 3 children) |
| Salary (net), interest and dividends | - 8,764 |
| Total | $17,464 |

---

3. In her list of expenses, appellee showed that she received $75.00 per month from her parents. We do not regard this as an item of expense.
4. Exclusive of the $900 per year ($75 per month) from her parents.

We now consider separately appellee's claim for increased alimony and child support.

## *Alimony*

The inquiry here is whether there has occurred such a material change in circumstances as to justify the chancellor in increasing the alimony set by the original decree in 1972. *Stansbury v. Stansbury*, 223 Md. 475, 164 A.2d 877 (1960). It is clear that the change in the *appellee's* financial situation was such that no increase was warranted. Her income has risen from practically zero ($277 per year) to the point where at the time of the modification hearing it amounted to a net income of approximately $8700.00. In addition, she was receiving $3300.00 per year in alimony, or a total annual income of approximately $12,000.00. In view of the lack of any evidence that her actual needs exceeded that figure, the question arises as to whether the increase in the *appellant's* income, standing alone, is sufficient to justify the ordered increase. In the circumstances of this case, we hold that it is not.

The appellee relies heavily on the case of *Lott v. Lott,* 17 Md. App. 440, 302 A.2d 666 (1973). In that case, it was argued that a substantial change in the circumstances of *both* parties since the original award is a prerequisite to increasing an original award of alimony and child support. We rejected that argument and affirmed an increased award even though the former wife's needs had not substantially changed since the date of the original award. Speaking for the Court in that case, Judge Carter said:

> "It seems clear from the principles enunciated in the above cited cases and text that a substantial increase in the husband's income alone can, *under appropriate circumstances,* be legally sufficient to justify an increase in the amount of alimony *even though the wife's needs continue as they existed at the time of the initial award.* Whether or not an increase is justified in such a situation, however, is to be determined by an application to the changed

442

conditions of all the relevant principles that are applied in fixing the amount of the original award of alimony." (Emphasis added). (Footnotes omitted).

The important phrase in the above quotation is "under appropriate circumstances." In *Lott,* the husband was a doctor who deserted his wife and child and disappeared with his paramour for approximately nine months. At the time of the desertion the parties enjoyed a rather high standard of living from his then "lucrative practice." When the husband returned nine months later, his wife obtained a divorce from him on the ground of adultery. At the time of the divorce, he was beginning anew the practice of medicine that he had lost during his absence. The alimony and support awarded the wife in the divorce decree reflected his comparatively low income at the time. Following the divorce, his income substantially increased approximating his income at the time of his desertion. Approximately one year after the divorce his former wife petitioned for an increase in alimony and child support. The chancellor ordered, and this Court affirmed, an increase in direct proportion to the increase in the doctor's net earnings before taxes since the original decree.

It is apparent that the justification for the increased award in *Lott* was the fact that it was *needed* by the former wife to maintain the standard of living to which she was entitled *at the time of the original decree.* The original award did not meet that need because of the husband's temporarily reduced income at the time. Thereafter, his income rose to the point that permitted the need to be met. Thus, the circumstances were "appropriate" for increasing alimony "even though the wife's needs continue[d] as they existed at the time of the initial award." *Lott v. Lott, supra,* at 447.

*Lott* does not mean that irrespective of the former wife's needs she is entitled to an increase in alimony so as to keep pace with the former husband's standard of living. All that was meant in *Lott* was that when, as there, a husband was directed to pay alimony, based on his income, and which did not meet the needs of the wife, a substantial increase in the former husband's income, alone, would justify an increase in alimony so as to satisfy the original "needs" of the wife.

In the case now before us, even though the former husband's income has substantially increased since the divorce, there is nothing in the record to indicate that the initial award was not commensurate with the standard of living to which the appellee was then entitled; nor indeed, is there anything in the record to indicate that the initial award together with her own resources are now inadequate to enable the appellee to maintain that standard. The circumstances of the instant case are therefore not "appropriate,"[5] as they were in *Lott,* for basing an increased award solely upon an increase in the former husband's income.[6] A divorced spouse is entitled to alimony only to the extent that "the spouse's income is insufficient to care for his or her needs." Md. Code, Art. 16, § 5 (1957, 1973 Repl. Vol., 1977 Cum. Supp.). An important factor in determining "needs" is the station in life of the parties at the time of the divorce or enforced separation. *Waters v. Waters,* 191 Md. 436, 62 A.2d 250 (1948). The "needs" of the obligee spouse do not ordinarily include the "need" or the right to have his or her standard of living keep pace with that of the other spouse after a final divorce.

Absent "appropriate circumstances," the rule in other jurisdictions that have considered the precise question (*i.e.,* whether an increase in the obligor spouse's income, standing alone, will justify an upward modification of an original alimony award) seems to be as expressed by the Court of Appeals of Arizona in *Sheeley v. Sheeley,* 10 Ariz. App. 318, 458 P.2d 522, 525 (1969):

"We are aware that a change in the financial

---

5. There may be other circumstances than those that existed in Lott v. Lott under which it may be "appropriate" on equitable principles, to increase an original alimony award based alone on the increased income of an obligor spouse. "A classic example would be the working wife who helps her husband through professional school, or the early years of professional or business growth, only to be displaced as the husband begins to reap the gains from a jointly invested foundation of savings, abstentions, and sacrifices." Hunter v. Hunter, 198 N.Y.S.2d 1008 (1960).

6. Having determined that the circumstances are not "appropriate" for an increase in alimony, we, of course, do not reach the issue of the *amount* of an increase. There is, therefore, no occasion to consider, as the appellee urges us to do, the various factors that may be relevant to a determination of the *amount* of an increase.

circumstances of the parties involved are [sic] one of the totality of circumstances which should be considered by the trial court in considering a modification of a divorce decree. An increase in the earning capacity of the husband after the divorce, *standing alone,* however, is not sufficient. A former wife has no continuing right to share in future accumulations of wealth by her divorced husband." (Citations omitted). (Emphasis supplied).

*See also Arnold v. Arnold,* 332 Ill. App. 586, 76 N.E.2d 335 (1947), where one of the issues was whether an increase in the divorced husband's assets and income entitled the divorced wife to live on a higher scale than at the time of the divorce. The Appellate Court of Illinois held: "The station in life to which defendant had accustomed plaintiff at the time of the entry of the decree and prior thereto is the station in life in which he is bound to maintain her now." 76 N.E.2d at 340. Although the Illinois Court increased the alimony in that case, it did so only because an increase was necessary to compensate for the inflationary costs of maintaining her standard of living and not merely because of her former husband's increased income and assets. In the present case, as we have said, there has been no showing that an increase is necessary under the circumstances.

The rationale for the rule is well expressed by the Supreme Court of Oregon in *Feves v. Feves,* 254 P.2d 694 (1953). After stating the general rule that in a modification proceeding an obligor spouse's "improved financial status, if any, does not of itself ordinarily warrant an increase [in alimony]," the Court said:

> "Divorce terminates the marital status. Thereafter, the parties bear no relation to each other. They are as strangers. But for the statute, no obligation whatever would exist for further support and maintenance of the former wife.[7]

7. *See* Bender v. Bender, 282 Md. 525, 529, 386 A.2d 772 (1978), to the same effect: "Divorce, unknown at common law, is entirely a creature of statute; similarly, the authority for allowing alimony in connection with a divorce stems solely from legislative enactment, through the standards governing

It is manifest that this statutory obligation for support and maintenance should not be so interpreted as to continue the rights of the former wife just as though no divorce had been granted. The statute does not contemplate a continuing right in her to share in future accumulations of wealth by her divorced husband, to which she contributes nothing." *Id.* at 700.

Based on the principles enunciated in the above cited authorities, we hold that, in the circumstances of the case at bar, the chancellor was clearly wrong in ordering an increase in alimony.

On the other hand, we do not believe that the chancellor was clearly wrong or abused his discretion in refusing to abate or eliminate alimony altogether. The appellant does not argue on appeal that he is unable to pay the amount awarded by the original divorce decree. There is no question that appellee's living expenses have increased dramatically since the divorce, not only for herself but for her children, the responsibility for whose support and maintenance she must share with the appellant. Although her own income would now appear to compensate for these increased expenses, we do not believe that her demonstrated ability to provide some support for herself requires a holding that under all the circumstances there is no longer a need for the alimony originally awarded her.

## II

Nor do we believe that the chancellor was clearly wrong or abused his discretion in increasing the amount of child support from $150.00 per month for each of the three children to $250.00 per month per child. This represents a total annual contribution from the husband for child support of $9000.00. In view of the uncontradicted testimony of the appellee that the cost of caring for the children was $11,378.00 per year and considering the disparity in income of the parties, we see no

its award, *i.e.* the factors to be taken into consideration in arriving at a proper amount, are judicially created." (Citations omitted).

reason to disturb the increased award for child support. Moreover, the principle that a divorced wife is not entitled to share automatically in future accumulations of wealth by her divorced husband does not apply with equal force to the matter of child support. After a final divorce, the husband-wife relationship ceases to exist. The parent-child relationship, however, is not affected by the divorce. The parties, though no longer man and wife, are still the parents of their children. The children's station in life should not therefore be fixed forever to their parents' station in life at the time of the divorce. It follows, therefore, that if thereafter either parent's income increases to the point where either of them enjoys a higher standard of living than obtained at the time of the divorce, their children should be entitled to have their needs measured by the higher standard.

## III

The appellee testified that on the morning of the modification hearing her son, John, then aged 16, had joined the U.S. Marines. The hearing took place on September 18, 1978. Before the chancellor decided the case, counsel for appellee informed the chancellor by letter dated October 6, 1978, that appellee "had just received a call from the United States Marine Corps indicating that John was being discharged and would be home in five days." The letter further stated: "At this time, we have no details concerning the discharge. However, the fact of the discharge obviously will have some bearing on your deliberations in this case, and I wanted you to be aware of it." A copy of the letter was sent to appellant's counsel. In his memorandum accompanying the order of October 28, 1978, the chancellor stated that in view of this information, "the Court assumes he [John] has returned to live with Mrs. Cole." The order awarded increased child support for John as well as the other two children living with the appellee. The order, filed on October 28, 1978, directed that the increase be retroactive to February 23, 1977, thus covering a period of 20 months of the increased payments prior to November 1978 (when the increased payments would otherwise have become operative).

The appellant argues on appeal that it was error for the chancellor to have awarded child support for John on the basis of "extra-judicial information and assumption." In his brief, the appellant, "in all candor" concedes that he "has since verified his son's discharge from the Marine Corps; but he has never been able to determine his son's current status." He states further in his brief that "[h]e is informed that John is now employed and, presumably, emancipated."

We think it was error for the chancellor to base the child support for John upon a matter that was not in evidence. Under the circumstances, however, we think the error was harmless, or, at the least, waived by the appellant so far as these proceedings are concerned. The letter of October 6th from appellee's counsel to the chancellor must certainly have been regarded by appellant as a request to consider John Cole as an unemancipated child because of his discharge from the Marines and his imminent return to his mother's home. The appellant, however, took no action to object to the granting of that request. The objections now being raised on appeal were never presented to the chancellor in this proceeding, although there was ample opportunity to do so, both before and after the court order of October 28, 1978. Moreover, in the subsequent contempt proceedings filed against the appellant for his failure to pay the increased awards of alimony and child support, including support for John, the appellant made no objection to the amount of the arrearage claimed to be due for John's support. The arrearage claimed by the appellee did not include any support payments for John for the months during which the appellee concedes that John was in an emancipated status, but did include the months before and after those two months. Furthermore, in his appeal of the contempt judgment in Appeal No. 519, the appellant does not question the *amount* of the monetary judgment entered against him. As we shall see, *infra,* his only claim there is that if the order for increased support is reversed in this appeal (Appeal No. 159) the contempt judgment should also be reversed. Additionally, we note that after the two months hiatus (October and November 1978) the appellant, voluntarily and without apparent objection,

resumed paying child support for John in the amount originally ordered by the 1972 divorce decree — action on his part that is completely consistent with appellee's position that except for the two months hiatus John was not emancipated.

For the foregoing reasons we do not believe that the technical error of the chancellor in "assuming" John to be unemancipated has given the appellant any just cause for complaint in this appeal.

## IV

Appellant's final complaint in this appeal (Appeal No. 159) is that the chancellor abused his discretion in making the increased awards retroactive to the date on which appellee filed her petition for modification. We find no abuse. We are referred to nothing in the record showing that whatever justification existed for the increased awards on the date of the chancellor's order did not also exist in February, 1977, when the petition was filed.

### APPEAL NO. 519

On February 5, 1979, while Appeal No. 159 was pending, the appellee filed in the proceedings a "Petition to Cite Defendant For Contempt of Court *and For Monetary Decree*" (emphasis added). The petition was based on appellant's failure to pay the increases in alimony and child support as directed by the order filed on October 28, 1978, from which the appeal had been taken. There was no claim that the amounts awarded by the original divorce decree had not been paid. In his answer to the petition, the appellant conceded that he had not paid the ordered increases and did not dispute the amount of the arrearage. By order filed March 30, 1979, the chancellor,

"ADJUDGED, ORDERED, and DECREED: That the Defendant is in contempt of this Court, and will be dealt with accordingly if found in this jurisdiction;

That the Clerk enter a monetary decree in favor of Nancy B. Cole against William Sterling Cole, Jr.

for $10,125 (the arrearage to 23 March 1979) and costs."

In his appeal from that order, the appellant, to quote from his brief,

"... does not contend that the appeal from the October 23, 1978 [filed October 28, 1978], decree stayed that decree or divested the lower Court of its power to enforce that decree by contempt citation or award of monetary judgment for arrearages found to be due under that decree. *Link v. Link,* 35 Md. App. 684, 371 A.2d 1146 (1977)."

In the view we take of the March 30th order, it is separable into two parts. The first paragraph of the order deals with what was clearly a constructive civil contempt proceeding. It was "constructive" because the contempt "was not committed in the presence of the court" (Md. Rule P 1 b). It was "civil" because it was a proceeding "intended to preserve and enforce the rights of private parties to a suit and to compel obedience to" an order "primarily made to benefit such parties," *State v. Roll and Scholl,* 267 Md. 714, 728, 298 A.2d 867 (1973). As said in *State v. Roll and Scholl,* "These proceedings are generally remedial in nature and are intended to coerce future compliance. Thus, *a penalty in a civil contempt must provide for purging.*" (Emphasis supplied). *Id.* at 728. *See also Herd v. State,* 37 Md. App. 362, 377 A.2d 574 (1977) and *Antonelli v. Antonelli,* 44 Md. App. 384 (1979). The contempt order in the present case does not meet that requirement. It must therefore be reversed.

The second part of the March 30th order simply provides for a monetary judgment for the arrearages of alimony and child support in the amount of $10,125.00. Such a judgment is not dependent upon an adjudication of contempt. It could have been obtained independently of any contempt proceeding. Consequently, although we have found the contempt portion of the order to be invalid, it does not follow that the entire monetary judgment must also fall.

As we have affirmed the child support increases awarded

by the October 28th order in Appeal No. 159, that portion of the monetary judgment pertaining to child support will be affirmed. That amount is $7,000.00.

With respect to that portion of the monetary judgment based on the unpaid arrearage of the increased alimony award, however, we shall reverse. That amount is $3,125.00. A money judgment based on an erroneous alimony award cannot be allowed to stand — not because the chancellor lacked the power to enter the judgment or that it was improper at the time it was entered, but because the foundation for the judgment has been shown upon a timely appeal to no longer exist.[8]

> *In Appeal No. 159, that portion of the order filed October 28, 1978, in the Circuit Court for Anne Arundel County awarding increased alimony is reversed; all other portions of the order are affirmed.*
> *In Appeal No. 519, that portion of the order of March 30, 1979, finding appellant in contempt is reversed; the money judgment entered as part of that order is reduced to $7000.00, plus interest from March 30, 1979, and as reduced the judgment is affirmed.*
> *Costs to be paid by appellant.*

---

8. In urging that no part of the money judgment be disturbed, the appellee cites Rand v. Rand, 40 Md. App. 550, 392 A.2d 1149 (1978). In that case, we held that a party *who had made child support payments* pursuant to a valid court order had no *"right"* of total recoupment" following a reversal or modification of the order on appeal — that the extent of recoupment was a matter for the trial court to determine in its discretion on the evidence. We see no application of the principles enunciated in *Rand* to the present case. Here, there is no claim for recoupment or restitution of money already paid, nor does that portion of the judgment being reversed involve child support, nor, as we have held in Appeal No. 159, does it appear that there was any need for the increased alimony.