## CARMEN D. TIDLER v. HAROLD S. TIDLER

[No. 56, September Term, 1981.]

*Decided October 8, 1981.*

The cause was argued before MORTON, LISS and MacDANIEL, JJ.

*Walter W. Johnson, Jr.,* for appellant.

*Robert S. Bourbon* for appellee.

Liss, J., delivered the opinion of the Court.

This is an appeal from an amended order and decree entered on November 5, 1980, by the Circuit Court for Prince George's County, Maryland, in Equity, wherein the chancellor terminated the appellant's continuing right to support and maintenance for herself pursuant to a modified order and decree entered on July 1, 1977, in another proceeding between the parties. The amended order and decree further reduced the amount of support the appellant was receiving for three minor children from $1700 each month to $1350 each month, effective November 1, 1980, and awarded appellee's attorney a counsel fee of $1000 to be paid by the appellant.

The appellant herein, Carmen D. Tidler, and the appellee, Harold S. Tidler, are formerly husband and wife. They were married in 1959 and had four children, two of whom are still minors. On August 15, 1978, the parties were divorced by a decree entered in the Circuit Court for Prince George's County, Maryland. The decree required appellee to continue support payments for appellant and the minor children in accordance with the provisions of a modified order and decree entered in Equity No. DR74-2958 in the Circuit Court for Prince George's County, Maryland, on July 1, 1977. That decree required the appellee to pay appellant the sum of $1400 each month for her support and maintenance and the sum of $2100 each month for support for the then four minor children of the parties.

On October 31, 1979, an order was entered in the proceeding below establishing a visitation schedule and dividing between the parties certain personal property owned jointly by them. The order also reaffirmed the support provisions contained in the modified order and decree entered on July 1, 1977, in Equity No. DR74-2958.

No further legal proceedings occurred in the court below until August 26, 1980, when the appellee herein filed a petition for order to show cause with reference to visitation. On September 15, 1980, an order to show cause was entered with respect to the petition with reference to visitation. The

order scheduled the petition for hearing on October 30, 1980 in the Circuit Court for Prince George's County, Maryland. The order to show cause, by its own language, required service of the petition and order to show cause upon the *appellant,* Carmen D. Tidler, on or before the 17th day of October, 1980.

On September 19, 1980, the appellee filed a petition for modification of decree, and on September 26, 1980, an order to show cause was filed with respect to that petition. The order to show cause was scheduled for hearing on the same date as the hearing on the petition with reference to visitation. The order further required service of a copy of the petition and order to show cause upon the *appellant, or her attorney, Walter W. Johnson, Jr., Esq.,* on or before October 7, 1980. Several letters were thereafter exchanged between counsel for the appellee and the chancellor. Counsel advised the chancellor that he was having some difficulty in obtaining service of the show cause orders on the appellant, as she had apparently relocated herself and the children to Puerto Rico. The chancellor advised counsel that in the alternative it was necessary to serve the appellant's attorney of record, but that no attorney of record was available and therefore they should serve the orders upon the appellant in Puerto Rico by mail. Counsel for the appellee subsequently filed a certificate of service certifying that on October 8, 1980, he mailed both a copy of the show cause order to modify the decree and the show cause order with reference to visitation to Walter W. Johnson, Jr., Esq. There is nothing in the record to indicate that any attempt was made to serve the appellant in Puerto Rico by mail.

On October 30, 1980, both show cause orders were called for a hearing before the chancellor. Neither the appellant nor her attorney appeared for the hearing. Appellee acknowledged having received a letter addressed to him from the court suggesting that he attempt service upon the appellant by mail. However, appellee represented to the chancellor that the appellant was "gone for good" and that he did not know whether Mr. Johnson intended to appear on

behalf of the appellant. The chancellor then asked appellee's counsel the following question:

THE COURT: Do you want to take a teaspoonful's worth of testimony about these things?

Counsel for the appellee then called his client to the stand, who testified with regard to the status of the older children and stated to the court that appellant had moved permanently to Puerto Rico with their children. The chancellor then asked the appellee if he knew anything about the living circumstances of the appellant, to which he replied:

Well, when she moved to Puerto Rico she sent me a letter some time after she was down there, telling me that she had moved permanently to Puerto Rico, and gave me the address down there. The address is the same address that I had for her mother and father in Puerto Rico, which is Bayamon, which is a suburb of San Juan.

Appellee conceded that he had an address for the children in Puerto Rico and stated that he had no contact with them since they left the Continental United States.

Appellee also testified that he did not think he should be required to continue to pay alimony to appellant because "she is perfectly capable of supporting herself," and that he had been paying his wife alimony and support for six years and "that's long enough." No testimony was offered to show the fundamental status of the parties or to demonstrate any change in the status of the parties which would justify the appellee's request that the payment of alimony be terminated. The chancellor then found that the evidence showed that appellant had removed herself from the home where she lived with the children and had returned to her homeland. The chancellor stated he would enter an order "relieving him [the husband] of the necessity of paying any further alimony, effective November 1, 1980." In addition, the chancellor reduced child support payments in the amount of $350 per month on the basis that since the last order for

support in the case, one of the minor children had reached the age of majority. The record is devoid of any testimony as to what support payment was necessary to provide appropriate support and maintenance for the remaining minor children. The chancellor commented that the wife "might well be in contempt" of the visitation order previously entered by the court and suggested the only way the visitation order could be enforced would be to hold up support payments for the children.[1] In furtherance of that conclusion, the court ordered that unless the children were sent to the United States to visit with the appellee for a month during the summertime, the court would direct that two months' payments be withheld from the support ordered by the court. Finally, the chancellor ordered appellant to pay appellee's counsel the amount of $1000 as a contribution toward the husband's counsel fees. He further directed that the award be entered as a judgment and be impressed as a trust upon appellant's interest in the family home. No testimony was offered as to the husband's ability to pay or the wife's ability to contribute to the payment of the husband's counsel fee.

In accordance with the chancellor's oral rulings, an amended order and decree was submitted and signed by the chancellor on November 5, 1980, which terminated appellant's $1400 monthly alimony payments, reduced the child support payments from $1700 per month to $1350 per month and awarded counsel fees to the husband in the amount of $1000. It is from this order that this appeal was filed. Three issues are raised for determination by this Court:

1. Did the trial court improperly hold an ex parte hearing on appellee's petitions for visitation and for modification of the divorce decree where it was contended that appellant was never properly served and never received proper notice?

2. Did the chancellor err in entering an order terminating appellant's prior alimony decree?

3. Has the chancellor demonstrated such hostility, bias and prejudice toward the appellant as

---

[1]. We know of no decision which would authorize the withholding of child support payments as a means of enforcing visitation rights.

would require him to recuse himself from any further proceedings in this case?

### 1.

Appellant contends that service of the two orders to show cause were never served upon her and she was therefore denied due process of law. Although it is conceded by appellant that the court had continuing jurisdiction of the subject matter of the litigation, appellant suggests that this jurisdiction did not authorize the chancellor to hold hearings on the petitions and orders which had not been served in accordance with the Maryland Rules of Procedure.

Maryland Rule 321 c provides as follows:

c. *Service of Copy — Exception.*

A copy of a motion, together with a copy of the affidavit and each supporting paper when required, shall be served upon the party affected by such motion, or his attorney of record, pursuant to Rule 306 (Service of Pleadings and Other Papers); but this section shall not apply to a motion introduced in open court either before trial, or during the course of trial, unless otherwise ordered.

Rule 306 a 1 and 2 read as follows:

a. *Pleading or Other Paper Requiring Service.*

1. What Must be Served — When Required.

A pleading, notice or other paper requiring service shall be served upon the parties to the action or upon their attorneys (except when in open court the defendant shall have obtained leave to file a plea in bar orally). A copy of any exhibit attached to a pleading pursuant to section b of Rule 301 shall also be served upon the parties to the action or upon their attorneys unless otherwise ordered by the court.

2. Clerk Not to Receive Without Proof of Service.

The clerk shall not accept or file any pleading,

notice or other paper requiring service other than an original pleading unless it is accompanied by an admission or proof of service of a copy thereof upon the opposite party, or his attorney of record.

It seems clear from the exchange of correspondence between the chancellor and counsel for the appellee that counsel knew that he was going to have to serve Carmen Tidler in Puerto Rico. Counsel for the appellee filed a certificate of service, certifying that on October 8, 1980, he mailed a copy of the order to show cause to modify the divorce decree, together with a copy of the petition to show cause with reference to visitation, to Walter W. Johnson, Jr., Esq., the attorney who represented Mrs. Tidler in the divorce proceedings. It is admitted that none of these petitions and orders were served upon appellant. Appellant calls our attention to Rule 125 e, which provides, in pertinent part, as follows:

e. *Exception.*

The appearance of an attorney shall be automatically terminated, for the purpose of service upon him of any process, notice of pleading, upon the entry of final judgment from which no appeal is taken, when the time allowed for such appeal has expired.

\* \* \*

Appellant argues that there is no evidence to indicate that Mr. Johnson was her attorney of record when the petitions and orders were mailed to him. Appellee seeks to avoid the effect of Rule 125 e by inserting into the record five letters exchanged between counsel for the parties from November 2, 1979 through August 28, 1980. All of these letters were written after the issuance of the final decree signed in September of 1978. It is clear from a reading of these letters that counsel for the appellant continued to participate actively in attempting to resolve the undetermined issues between the parties long after the execution of the divorce

decree. The problem for the appellee is that none of this correspondence is properly before this court. Rule 1028 of the Maryland Rules of Procedure mandates that the record extract in a case before this Court shall be copied verbatim from the record before the trial court. In the absence of an appropriate order, none of the parties to a case may insert into the record extract matters which were not before the court in the trial below. *See Community Realty Company, Inc. v. Siskos,* 31 Md. App. 99, 354 A.2d 181 (1976). The issue as to whether Mr. Johnson was still the appellant's counsel of record was not raised or decided below, and the letters unilaterally made a part of the record extract below were never offered or considered at the trial of this case. We may not speculate as to what the chancellor might have held if the issue and the evidence had been properly presented to him. We conclude that the letters are not properly before us, and should therefore be ignored in our decision of the issue as to whether Mr. Johnson was appellant's counsel of record at the time service was attempted to be made on him. On the basis of the evidence properly before us, we conclude he was not. It is evident that no service was ever made on the appellant nor was any service on her ever attempted. We hold that the ex parte hearing before the chancellor amounted to a denial of due process of law in that appellant was not given appropriate notice and did not receive an opportunity to be heard before being deprived of valuable property interests awarded to her in the original divorce decree. *See Griffin v. Griffin,* 327 U.S. 220, 66 S.Ct. 556, 90 L.Ed. 635 (1946); *Sullivan & A-1 Ins. Agency, Inc. v. Insurance Commissioner of the State of Maryland & Aetna Casualty & Surety Co.,* 291 Md. 277, 434 A.2d 1024 (1981); *Glading v. Furman,* 282 Md. 200, 383 A.2d 398 (1978); *State v. Greer,* 263 Md. 692, 284 A.2d 223 (1971); *Steed Mortg. Co. v. Arthur,* 37 Md. App. 592, 378 A.2d 690 (1977); *Kaplan v. Bach,* 36 Md. App. 152, 373 A.2d 71 (1977); *J. Whitson Rogers, Inc. v. Hanley,* 21 Md. App. 383, 319 A.2d 833 (1974).

## 2.

Even if we had held to the contrary on the first issue presented by appellant, nevertheless, we would be required to reverse the chancellor's amended decree. At the very beginning of the hearing the chancellor suggested to appellee's counsel that it would be sufficient for the appellee to offer a "teaspoonful's worth of testimony" in support of his petition for modification of the original divorce decree. However, after our examination of the record we find that the appellee failed to offer even an eyedropper full of testimony. The sole evidence offered to support the appellee's petition was his testimony that he had paid alimony "long enough" and that he did not want "to pay anymore."

It is well settled in Maryland that a court of equity may, upon proper petition, modify a decree of alimony or child support at any time if there is an affirmative showing of a material change in the circumstances between the parties which would justify such action. *Jackson v. Jackson,* 272 Md. 107, 321 A.2d 162 (1974); *Stansbury v. Stansbury,* 223 Md. 475, 164 A.2d 877 (1960); *Winkel v. Winkel,* 178 Md. 489, 15 A.2d 914 (1940); *Cole v. Cole,* 44 Md. App. 435, 437, 409 A.2d 734 (1979). The decision on modification of a decree is discretionary with the chancellor and will not be disturbed upon appeal in the absence of a showing of an arbitrary exercise of discretionary power or that the judgment is clearly erroneous. *Lott v. Lott,* 17 Md. App. 440, 302 A.2d 666 (1973). The record in this case is totally devoid of any testimony which could reasonably support any action by the chancellor in modifying the original decree. The absence of such factual information necessarily requires that we find the chancellor arbitrarily exercised his discretionary power.

We reach the same conclusion as to the award of the $1000 counsel fee to the appellee. Counsel fees should be awarded according to the ordinary factors of labor, skill, time and benefit, and the amount of the fee cannot be wholly disassociated from the financial resources of the party charged. *See Waters v. Waters,* 191 Md. 436, 62 A.2d 250 (1948); *Quinn v. Quinn,* 11 Md. App. 638, 276 A.2d 425

(1971). In determining the amount of counsel fees to be paid by the husband to the wife's solicitor, the court should take into consideration the financial circumstances of the parties, and the final determination should be in accordance with the wife's needs and the husband's ability to pay. *See Lopez v. Lopez,* 250 Md. 491, 243 A.2d 588 (1968). This now applies with equal force to both the husband and the wife since the adoption of the Equal Rights Amendment to the Maryland Constitution [Article 46 (1978)]. The record is again devoid of any factual information which would support the chancellor's allowance for counsel fees and we must therefore reverse.

We further direct the chancellor's attention to the fact that the modification of the award for child support by reducing the payments by one-fourth merely because one of the four minor children attained majority is not supported by any facts in the record. As this Court has stated, in *Becker v. Becker,* 39 Md. App. 630, 387 A.2d 317 (1978):

> We adopt the rule set out in 2 Nelson, *Divorce and Annulment,* [Sec. 14.91 at 127-8 (2d ed. 1961)] and hold that [the trial judge] was correct in concluding that appellant's obligation to pay child support as provided for [in the decree] was not automatically affected by the elder child's having attained his majority. [39 Md. App. at 634.]

The general rule as adopted in *Becker, supra,* found in 2 Nelson, *Divorce and Annulment, supra,* is stated in its entirety as follows:

> In the absence of an agreement providing otherwise, the allowance for support of a child is ordinarily limited to his or her minority. However, where one monthly sum is awarded for support of several minor children during their minority, it will be considered as providing monthly payments of such sums until the youngest child has attained his majority. [39 Md. App. at 632].

The rationale behind the adoption of this rule, as stated in *Becker, supra,* is as follows:

> The reason for considering a single amount to be paid periodically for the support of more than one child as not subject to an automatic pro rata reduction is two-fold. First, a child support order is not based solely on the needs of the minor children but takes into account what the parent can afford to pay. [citation omitted.] Consequently, a child support order may not accurately reflect what the children actually require but only what the parent can reasonably be expected to pay. To allow an automatic reduction of an undivided order would be to ignore the realities of such a situation. Second, to regard an undivided child support order as equally divisible among the children is to ignore the fact that the requirements of the individual children may vary widely, depending on the circumstances. . . . [citations omitted.] [39 Md. App. at 633-34].

Under these circumstances, we conclude that there was insufficient evidence to sustain the chancellor's modification of the order as to the reduction of child support payments and that the chancellor overstepped the bounds of discretionary power vested in him.

### 3.

Finally, appellant suggests that the chancellor exhibited such hostility and bias towards her so as to require the chancellor to recuse himself from any further proceedings in this case or, in the alternative, that he not be permitted to hear any future proceedings in this controversy. We have carefully reviewed the record in this case and we find no evidence to support the appellant's allegations of bias and prejudice by the chancellor. Error does not necessarily equate with bias or prejudice, and while it is clear that the chancellor erred in several instances in his decision in this

case, there is absolutely no evidence that the errors were based on bias or prejudice. We note with some degree of cynicism that while the chancellor was making substantial awards for alimony and child support in favor of the wife, over a period of years while this case was pending, she had no complaint as to the decisions of the chancellor. It was not until the chancellor made the several rulings adverse to her in this case that she perceived the existence of bias and prejudice. So far as the suggestion that the chancellor should recuse himself, that motion may be made before the chancellor upon remand. Whether or not to recuse himself is a matter within the discretion of the court, *Marzullo v. Kovens Furniture Co. of Baltimore City*, 253 Md. 274, 252 A.2d 822 (1969), and will not be disturbed on appeal except for an abuse of discretion.

> *Amended order and decree reversed, cases remanded for further proceedings not inconsistent with this opinion.*
> *Costs to be divided between the parties.*