534 A.2d 1360

**Milton Joseph PAYNE, Jr.**

v.

**Shirley Louise PAYNE.**

**No. 440, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

Jan. 7, 1988.

474

Marc G. Rasinsky, Westminster, for appellant.

Alan H. Silverberg (E. David Silverberg and Summerfield, Willen, Silverberg and Nesson on brief), Owings Mills, for appellee.

Argued before GARRITY, BLOOM and ROSALYN B. BELL, JJ.

BLOOM, Judge.

Milton Joseph Payne Jr. appeals from a judgment of the Circuit Court for Carroll County which granted him a divorce *a vinculo* from appellee, Shirley Louise Payne. Appellant's complaints are that the judgment of divorce awarded Mrs. Payne certain items of personal property which he claimed he was to receive under the parties' separation agreement; ordered appellant to pay half of a bill incurred by appellee for repairing the septic system at the former marital abode; increased the amount of child support payable by appellant; and rejected appellant's claim for damages sustained as a result of Mrs. Payne's breach of the separation agreement. Appellant contends that the trial court erred in its findings of fact, in its interpretation of the separation agreement, and in its refusal to admit evidence of the damages caused by Mrs. Payne's breach of the separation agreement. Mr. Payne also asserts error in the rejection of his claim that he was entitled to reimbursement for payments he made on a tractor that was awarded to Mrs. Payne.

We find no reversible error on any issue that was properly preserved for our review and will affirm the judgment.

### Facts

The Paynes were married on February 19, 1972. The marriage produced two children, Michael Scott Payne, born 19 June 1979, and Michelle Evelyn Payne, born 7 July 1981.

In 1984 serious marital difficulties surfaced, and on December 31 of that year the parties entered into a voluntary separation and property settlement agreement, which contained the following provision with respect to their personal property:

Each party shall be entitled to the property in their [sic] present physical possession. Each of the parties transfers and assigns to the other all of their [sic] respective

right, title, and interest in and to the personal property, above recited, free of any and all claims of the other party.

The document also stated that "[t]he parties agree to immediately list the real estate [family home] for sale with a mutually agreeable licensed realtor at a fair market price." It further provided that the "[w]ife shall have the right to occupy the premises until the sale and shall assume full responsibility for all utility and telephone expenses."

On 5 February 1985, pursuant to the separation agreement, the parties signed a listing contract with a realtor to sell the family home. Despite the usual advertising, multiple listing, and two open houses, no offers of purchase were received. About one month after she and her husband had signed the listing contract, Mrs. Payne decided that, in the interest of their older child's health, the house should not be sold. Scott was experiencing emotional difficulties, attributed to the separation of his parents and to the sales activities. After consultation with Scott's behavioral pediatrician, Mrs. Payne pulled up the for sale sign in front of the home. She sought, *pendente lite*, a use and possession order for the family home, but her request was denied. Around January or February 1986, according to Mrs. Payne, Scott began to improve emotionally and she then decided to comply with the separation agreement and cooperate in the selling of the home. The property was sold two days after it was again placed on the market.

Additional facts will be referred to as necessary to the discussion of the issues.

## Issues

Appellant has presented this Court with a pentad of issues:

1.  Did the trial court commit clear error when it awarded appellee items of personalty which were subject to an oral agreement of the parties?
2.  Did the trial court err in not awarding appellant a refund for the value of payments he made on the

tractor when it awarded title to the tractor to the appellee pursuant to the Property Settlement Agreement?

3. Did the trial court err by awarding appellee contribution from appellant for repairs made to a utility where the appellee assumed full responsibility, pursuant to a Voluntary Separation and Property Settlement Agreement for all utility expenses and where said repairs were made without consultation with appellant?

4. Did the trial court err by disallowing any testimony regarding whether the marital home would have sold at an earlier date were it not for Mrs. Payne's interference with the sale following the separation of the parties?

5. Was the trial court clearly erroneous in granting an award of child support in an amount greater than that provided in the separation agreement of December 31, 1984, and prior order of the circuit court of October 22, 1985?

We will respond to each of these questions, but in a somewhat different order than appellant asked them.

## I

Mr. Payne testified at trial that, contemporaneous with their execution of the separation agreement, he and Mrs. Payne agreed that certain personal property, including, *inter alia,* gardening equipment, lawn furniture and a tractor, would belong to Mr. Payne but would remain stored with Mrs. Payne at the family home. This alleged contemporaneous second agreement contradicted the separation agreement's provision that "[e]ach party shall be entitled to the property in their present physical possession," and Mrs. Payne denied that she ever agreed to store any of Mr. Payne's property at the family home. The trial judge believed Mrs. Payne; accordingly, he ordered that the disputed property, which Mr. Payne had taken from the home,

be returned to Mrs. Payne. A few of those items had been sold by Mr. Payne, and the court ordered him to turn over to Mrs. Payne the proceeds of sale, $49.00.

We will not reverse the trial court's findings of fact unless they were clearly erroneous. Maryland Rule 1086; *Boyd v. State,* 22 Md.App. 539, 549, 323 A.2d 684, *cert. denied,* 272 Md. 738 (1974). We must affirm a decision based upon such findings of fact when there is conflicting evidence because the trial judge is better able than we to determine "the weight and value of such evidence," and because it is simply not our function to determine the credibility of witnesses. *Carling Brewer Co. v. Belzner,* 15 Md.App. 406, 412, 291 A.2d 175 (1972).

We affirm the trial judge's awards of personal property and sales proceeds to Mrs. Payne because they were based on findings of fact that were supported by evidence the trier of fact found to be credible.

## II

After Mr. and Mrs. Payne separated, the septic system for the family home, then occupied by Mrs. Payne and the parties' children, broke down and required extensive repairs. Mrs. Payne testified that the repairs were necessary in order to keep the septic system functioning; she did not consult Mr. Payne to obtain his approval before contracting to have the system repaired.

Mr. Payne contends the trial court erred in ordering him to pay half the septic system repair bill because the separation agreement clearly provided that Mrs. Payne would "assume full responsibility for all utility ... expenses." He also asserts the trial court erred in failing to interpret "utility expenses" to include septic system repairs. We disagree.

The court did not err in determining that the Paynes' septic system was not a "utility" and that therefore Mrs. Payne was not solely liable for its repair. The word "utility" is nowhere defined in the agreement, and it is clearly the law that "[i]n construing contracts, words are to be

given their ordinary meaning." *Liller v. Logsdon,* 261 Md. 367, 370, 275 A.2d 469 (1971); *Mascaro v. Snelling and Snelling,* 250 Md. 215, 229, 243 A.2d 1 (1968). We feel that the trial judge properly concluded that the word "utility," as used in the agreement's provision that "wife ... shall assume full responsibility for all utility and telephone expenses," referred to public utility services—as opposed to a private septic system. Particularly in view of the fact that the agreement joins together utility expenses and telephone expenses in the same context, the court's interpretation of the agreement is far more reasonable and logical than that contended by appellant.

■ Appellant also argues that he should not be accountable for half the cost of repairing the septic system, no matter how necessary such repairs may have been, because Mrs. Payne failed to consult him and get his assent before ordering the repairs. We find nothing in the record extract to indicate that this point was raised or decided below. It is not properly before us, therefore, and we do not consider it. Md.Rule 1085.

### III

■ Having failed in his effort to persuade the court to award the tractor to him, appellant asserts that at least he is entitled to recover from appellee the payments he made toward the tractor's purchase. From our examination of the record, it appears that appellant is making this argument for the first time on appeal. This he cannot do.

We find nothing in the record to indicate that at any point during the proceedings below Mr. Payne requested an award in his favor for tractor payments. Appellant included no pleadings in the joint record extract showing a request for such an award, and the trial court's order makes no mention of any claim for tractor payments. We reiterate that we will not review on appeal a claim that was neither raised in nor decided by the lower court. Md.Rule 1085; *Medley v. State,* 52 Md.App. 225, 230–31, 448 A.2d 363, *cert. denied,* 294 Md. 544 (1982); *Robinson v. State,* 66

Md.App. 246, 254–55, 503 A.2d 725, *aff'd,* 307 Md. 738, 517 A.2d 94 (1986).

### IV

Appellant asserts that the trial court improperly excluded evidence of damages caused by appellee's willful breach of the separation agreement's provision that the house be "immediately" listed for sale.

At trial, Mr. Payne produced a real estate agent whom he qualified as an expert and from whom he attempted to elicit evidence that the house would have sold earlier but for Mrs. Payne's willful breach of the separation agreement. The trial judge refused to allow the real estate agent to testify, concluding that "the whole thing is too speculative." Mr. Payne's counsel stated that "I'm attempting to establish the basis to try to ask the ultimate question as to whether or not this house would have sold based on her expertise ... I believe that Mrs. Brown can probably give us an idea based on her expertise as to what that house is worth."

Although it is not clearly articulated, we infer that appellant is claiming that he was attempting to elicit from the real estate agent evidence that as a result of Mrs. Payne's breach, Mr. Payne "had sustained economic harm in a readily ascertainable amount."

■ It is a requirement under Maryland law that in order to preserve an error of improper exclusion of evidence counsel must "make an offer of proof (proffer) as to what the evidence would have been." McLain, *Maryland Evidence* § 103.17 (1987); *Western Maryland Railway v. Griffis,* 253 Md. 643, 653, 253 A.2d 889 (1969). A general statement as to the subject matter or the legal conclusion is not sufficient; counsel must present a detailed summary of what the evidence would have been. *Hughes v. Averza,* 223 Md. 12, 18, 161 A.2d 671 (1960).

■ To preserve this issue for appellate review, it was incumbent upon appellant to proffer what the real estate agent would testify to with respect to damages, that is, to indicate how the witness could establish that appellee's

breach resulted in damages and how such damages could be ascertained or measured. Appellant does not now contend that damages were incurred because of a depreciation in market value of the property; his sole complaint is that the house could have been sold earlier. But as the trial judge commented, when the property would have been sold but for the alleged breach and at what price were matters of pure speculation. In view of the fact that no firm offers had been received during the first listing before the alleged breach, we cannot say that the trial judge was wrong in that assessment. If appellant were prepared to present evidence that would amount to more than speculation, it was incumbent upon him to proffer it at that time.

## V

■ Finally, appellant contends that it was error for the court to award child support greater than that which had been awarded *pendente lite* in the absence of proof of any change in circumstances subsequent to the *pendente lite* order. In support of that contention, appellant cites *Slacum v. Slacum,* 158 Md. 107, 148 A. 226 (1930); *Cole v. Cole,* 44 Md.App. 435, 409 A.2d 734 (1979); and *Tidler v. Tidler,* 50 Md.App. 1, 435 A.2d 489 (1981), for the proposition that an existing order for child support may be modified only when the evidence clearly indicates a change in circumstances justifying the same. Although the cases cited all support the abstract principle of law for which they are cited, neither they nor that abstract principle is relevant here. None of those cases involved a *pendente lite* order, and we think it is not appropriate to apply the "change in circumstances" requirement to *pendente lite* orders. They, after all, are designed to provide for purely temporary needs on a short term basis, whereas the provisions for support in a final judgment of divorce are perforce intended to be more permanent and cover equally essential but less frequently recurring living expenses. Consequently, the same evidence that would necessitate a relatively small award of *pendente lite* support may very well justify a much larger award of support in the final decree.

We adopt the reasoning of the Louisiana Court of Appeals, which has stated:

> [A] judgment of divorce terminates awards for child support and alimony *pendente lite* made in a prior judgment of separation from bed and board. [Citations omitted.] Since the child support in the judgment of separation ... terminate[s] with the judgment of divorce, it is immaterial whether there [is] any change of circumstances. In the divorce proceedings, the plaintiff [spouse] is seeking a new award for child support after divorce, not an increase in the previous award. It is not necessary ... to show any change in circumstances.

*Manuel v. Broderson,* 298 So.2d 333, 335 (La.App. 3 Cir. 1974). *See also, Baine v. Baine,* 510 So.2d 262, 263 (Ala. Civ.App.1987); *Plauche v. Plauche,* 444 So.2d 800, 801 (La.App. 3 Cir.1984); *Sizemore v. Sizemore,* 423 So.2d 239, 241 (Ala.Civ.App.1982); *Morrison v. Morrison,* 316 So.2d 453, 458 (La.App.1975), *cert. denied,* 322 So.2d 772 (La. 1975); *Worley v. Worley,* 247 So.2d 254, 257–58 (La.App. 3 Cir.1971); *Fellows v. Fellows,* 267 So.2d 572, 574 (La.App. 3 Cir.1972). *Cf. Green v. Green,* 64 Md.App. 122, 153, 494 A.2d 721 (1985), where we affirmed, as being within the chancellor's discretion, that part of a divorce decree which awarded *less* support than had been awarded *pendente lite. See also, Maynard v. Maynard,* 42 Md.App. 47, 52, 399 A.2d 900 (1979), in which we held that an initial award of permanent alimony may be in excess of an amount awarded as alimony *pendente lite* without proof of change in circumstances.

Nor does *Unkle v. Unkle,* 305 Md. 587, 505 A.2d 849 (1986), upon which appellant relies, support his position. There the *pendente lite* child support consisted of medical and dental insurance and payment of utility bills and half the mortgage payments on the family home. The final decree ordered the father to continue such support until the house was sold, after which he would be required to pay $50 per child per week. The Court of Appeals reversed that

judgment because it was based on pure speculation as to future needs, there being no evidence concerning the financial circumstances of the parties at the time of the sale of the marital home.

Here there was evidence of the current needs of the children as of the time of the final divorce judgment, evidence that the cost of supplying those needs was greater then than at the time of the *pendente lite* award, and evidence clearly indicating that the cost of supporting the children would increase substantially in the immediate future.

Whether we treat the judgment appealed from as an initial award of child support or a modification of a prior award (*pendente lite*), it is axiomatic that the decision rested in the sound discretion of the chancellor and will not be disturbed upon appeal in the absence of a showing of an arbitrary exercise of that discretionary power or that the judgment is clearly erroneous. *See Tidler v. Tidler, supra,* 50 Md.App. at 9, 435 A.2d 489; *Lott v. Lott,* 17 Md.App. 440, 302 A.2d 666 (1973). Finding neither clear error nor arbitrary exercise of discretion here, we will affirm the judgment.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.